# Amanda J. Sanborn *vs.* Isaiah S. Lang.

*Competency of Witness—Acts of* 1864, *ch.* 109 *and* 1868, *ch.* 116—*Evidence—Deed by a Husband in fraud of the rights of his Wife, who survived him, Void.*

On a bill by a widow against the grantee in a voluntary deed from her husband of nearly the whole of his property, to have such deed declared fraudulent and void as against her rights, she is competent under the Acts of 1864, ch. 109 and 1868, ch. 116, to testify as to what passed in an interview between herself and the defendant, and as to certain letters from him to her husband found in his desk after his death.

In a proceeding to have a deed declared fraudulent and void as against the rights of the widow of the grantor, his declarations to the conveyancer with respect to the deed, and his object and purpose in making it, being contemporaneous with its preparation and execution, are admissible in evidence.

A married man by a deed voluntary and without valuable consideration, conveyed nearly the whole of his property to his nephew. To the conveyancer who prepared the deed, he stated that his purpose was to deprive his wife of the property. The deed was executed on the 20th of May, 1872, and recorded the same day in Baltimore. The grantee lived in New Hampshire

and never had possession of the deed till after the death of the grantor in July, 1873. Before the deed was executed, a power of attorney was sent to the grantee and executed by him in New Hampshire, by which the grantor was authorized "to sell and convey, mortgage or otherwise dispose of the property." In August, 1872, the grantor wishing to borrow $1000 for his own use, one of the pieces of property mentioned in the deed, was mortgaged to secure it. The mortgage and notes were sent to the grantee and by him were executed. The grantor remained in possession of the property embraced in the deed, until his death. On a bill filed by the widow against the grantee, to have the deed declared void as in fraud of her rights, it was HELD :

That the deed was not made *bona fide;* but as to the complainant was fraudulent, and could not óperate to deprive her of her legal rights as widow and distributee.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellant, the widow of David M. Sanborn, and Martha P. Hood, his only child, against the appellee residing in New Hampshire. The object of the bill was to have a deed from the deceased to the appellee, made as expressed upon its face, for good and valuable consideration, and the sum of five dollars, declared fraudulent and void, as against the complainants. The bill averred that the said David M. Sanborn departed this life in the city of Baltimore, on the 24th of July, 1873, intestate, seized and possessed of certain real and personal estate, to the value of $5000 ; that the appellee, a resident of New Hampshire, pretended to be seized of said property by virtue of a deed to him from the said David, dated the 20th of May, 1872 ; that said deed was without a valuable consideration, and as against the complainants, and the creditors of the said David, was fraudulent and void ; that it was made in contemplation of the death of the grantor, and with the avowed and express intent, design and purpose of depriving the complainants of their distributive shares of the estate of the deceased.

The bill further charged that the appellee had come to Baltimore from his home in New Hampshire, and was

making extraordinary efforts to sell and dispose of the property in question in order to defraud the complainants and creditors of their just rights in the premises; that letters of administration would be taken out on the personal estate of the deceased in a few days; and that the complainants were advised that after the payment of the debts of the deceased by the administrator to be appointed, they would be entitled to the balance of the estate of said deceased. The bill prayed that the defendant should answer under oath; that the deed to him might be declared null and void, and that an injunction might issue restraining the defendant from selling, conveying, mortgaging, incumbering or in any manner disposing of the property aforesaid.

The defendant answered, denying all fraud and deceit as charged in the bill, and affirming that the deed to him was in every respect *bona fide,* and for a good and valuable consideration. He admitted that the appellant had a dower right in the ground rent, issuing out of one of the pieces of property embraced in the deed, and charged that she had received her thirds thereof since the death of her husband; that before and since the execution of the deed the respondent had been assisting the deceased whenever he desired money, and that since the execution of said deed, he had mortgaged the leasehold property embraced therein, for the express purpose of raising $1000 for the deceased, and that the sum so raised had been paid directly to him; that said property remained charged with said sum and interest which the respondent would be compelled to pay at the maturity of the mortgage. The answer denied that the deed was made in contemplation of the death of the grantor, or for the purpose and intent to deprive the complainants or either of them of their distributive share in his estate. It charged that the deceased had in bank at the time of his death some four or five hundred dollars, and his household furniture and other

property and debts were in the hands of his administrator more than sufficient to meet any claims against the estate of the deceased, and leave a good support to his widow. A general replication was filed to the answer, and testimony was taken to support the allegations of the bill. A further statement of the case is contained in the opinion of the Court. By direction of counsel the bill was dismissed as to Mrs. Hood. The Circuit Court (PINKNEY, J,) passed a decree dismissing the bill. From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*Richard Hamilton*, for the appellant.

A Court of Equity will defeat any conveyance by which a husband seeks to deprive his wife of her marital rights in his estate, after his death. *Smith vs. Fellows*, 2 *Atkyns*, 62 ; 7 *Viner's Abridgment*, 202 ; *Fairebeard vs. Bowers, 2 Vernon*, 202 ; 2 *Roper on Husband and Wife*, 14 ; *Griffith vs. Griffith, 4 H. & McH.*, 101.

The deed to the defendant in this case was executed by the grantor without a valuable or good consideration, and for the express purpose and design of depriving his widow of her share of his personal estate, and must be set aside as a fraud upon her rights. *Hays vs. Henry*, 1 *Md. Ch. Dec.*, 337 ; *Dunnock vs. Dunnock*, 3 *Md. Ch. Dec.*, 140 ; *Roberts on Fraudulent Conveyances*, 48.

One of the badges of fraud in this case, is the fact that the husband retained the possession of the property after the transfer of the title, and up to the time of his death. *Hays vs. Henry*, 1 *Md. Ch. Dec.*, 337 ; *Smith vs. Fellows*, 2 *Atkyns*, 62 and 377 ; *Hall vs. Hall*, 2 *Vernon*, 276.

The right of a wife to a support from her husband, is a legal liability, and a conveyance to defraud her of it, is void, under the Statute of Elizabeth, as made to defraud

creditors, she being a creditor under that Statute. *Feigley vs. Feigley,* 7 *Md.,* 537 ; *Smith vs. Fellows,* 2 *Atkyns,* 62 ; *Fairebeard vs. Bowers,* 2 *Vernon,* 202.

In order to sustain the deed as a voluntary instrument, the *onus probandi* is upon the grantee. If there be a reasonable doubt the deed must fail. *Worthington vs. Shipley,* 5 *Gill,* 460.

The declarations of the deceased about the deed were admissible in evidence. The declarations of a fraudulent grantor to a conveyancer at the time of preparing the deed, though made out of the presence of the grantee, are admissible as part of the *res gestæ* to show the intention with which it was made, as also prior and sometimes subsequent declarations of the grantor, concerning the deed, when it is assailed by creditors under the Statute of Frauds. *McDowell vs. Goldsmith,* 6 *Md.,* 319 ; *Curtis vs. Moore, et al.,* 20 *Md.,* 93.

Where a party is in condition to produce proof, and does not produce it, the presumption against him is absolute. *Greesly Eq. Ev.,* 471 *and* 487 ; *East India Co. vs. Donald,* 9 *Ves.,* 280 *and* 281 ; *Lupton vs. White,* 15 *Ves.,* 441.

The mortgage whereby the deceased raised $1000, and the power of attorney giving him power to sell or dispose of the property, (not being contradicted,) are absolute proof of a contrivance or design on the part of the deceased to cheat the laws respecting intestacy, and that it was not his intention to make a gift, but merely to defraud his widow at the time of his death.

*James W. Denny,* for the appellee.

The bill of complaint in this case does not charge the grantee in the deed with any wrong whatever, and therefore to him it must be presumed to be *bona fide,* as his answer affirms.

The exceptions to the testimony are well taken. The same is inadmissible ; and, if even admissible, is mere

conjecture, and totally insufficient to vacate an absolute deed made by the husband of the appellant fourteen months before his death. *Cooke vs. Cooke's Exc.,* 29 *Md.,* 538; *Jones vs. Jones,* 36 *Md.,* 453.

This is not a creditor's bill, and the Statute of Elizabeth made for the protection of creditors, cannot be applied as the law of the case. The appellant only became entitled on the death of her husband to the "widow's share" after "*all his debts* were paid, under the statute of distribution. *Code, Art.* 93, *sec.* 120-125; *Code, Husband and Wife, sec.* 5; *Lightfoot vs. Colgan,* 5 *Munford,* 42.

If Dr. Sanborn conveyed the property to Lang and the deed was executed, acknowledged and recorded according to law, then it is immaterial whether the same was for value or merely voluntary. *Williams, et als. vs. Banks, et als.,* 11 *Md.,* 198; *Hays vs. Henry,* 1 *Md. Ch. Dec.,* 341.

If Dr. Sanborn has completely divested himself of his entire interest, and done all that was necessary to complete the grantee's title, then the deed must stand as against the widow, even if made with intent to deprive her of a distributive share in his personal estate. *Dunnock vs. Dunnock,* 3 *Md. Ch. Dec.,* 140; *Feigley vs. Feigley,* 7 *Md.,* 537; *Lightfoot vs. Colgan,* 5 *Munford,* 42 to 77; *Cameron vs. Cameron,* 10 *Sm. & Mar.,* 394; *Stewart vs. Stewart,* 5 *Conn.,* 317; *Holmes vs. Holmes,* 3 *Paige,* 363; 2 *Roper on Husband and Wife,* 17, 18; *Hall vs. Hall,* 2 *Vernon,* 276; *Ingram vs. Phillips,* 5 *Strobhart's Rep.,* 206.

Under our registry laws the recording of the deed fourteen months before the death of Dr. Sanborn, was sufficient notice of possession and gave to the grantee the *jus disponendi,* and the absolute control over the property which control he has exercised from the date of the deed to the present time. *Williams, et als. vs. Banks, et als.,* 11 *Md.,* 198; *Mayor, &c. of Balt. vs. Williams,* 6 *Md.,* 235, *and note on page* 272; *Sexton vs. Wheaton,* 8 *Wheaton,* 229; *Bump's Fraud. Conveyances,* 160, *and cases cited;* 1 *Story's Equity, sec.* 403.

BARTOL, C. J., delivered the opinion of the Court.

An examination of this case has brought us to a different conclusion from that expressed by the Judge of the Circuit Court. This proceeds, we think, more from a difference of opinion with regard to the facts of the case, as they are disclosed by the record, than from any conflict between us as to the legal principles involved in its decision. These were stated with substantial accuracy by the late Chancellor JOHNSON, in *Hays vs. Henry,* 1 *Md. Ch. Dec.,* 337.

In *Feigley vs. Feigley,* 7 *Md.,* 538, the Court of Appeals had under consideration the question of the restraints imposed by law upon the power of the husband to alienate his property, to the prejudice of his wife's just claim to his maintenance and support; and of her right to assail voluntary conveyances made by him on the ground of fraud.

The question arose in this way. The wife had filed a bill praying for a divorce *a vinculo;* pending the suit, the husband made a voluntary deed, conveying his property to his sister; which the complainant by a supplemental bill for alimony, alleged to be merely fictitious, not intended really to deprive the grantor of the benefit of the estate, but only to save the same for his own benefit; and prayed that the deed be declared null and void, as fraudulent against her.

The Court held that the wife stood in relation to her husband, in reference to her claim for a support and for alimony, to some extent, in the same attitude as a creditor stands towards his debtor; and that she was entitled to protection under the Statute of Elizabeth, against conveyances made by him fraudulently for the purpose of hindering, delaying or defrauding her of her just and lawful actions, *id., p.* 561.

The Court said, speaking by Judge MASON, who delivered the opinion : "We do not wish to be understood as carrying this doctrine to an extent which would impose

any restraint upon the husband, in the free and unlimited exercise of his right to alienate his property at will, even though in the exercise of this right he strips himself of all means of supporting or maintaining his wife, provided he does so *bona fide*, and with no design of defrauding her of her just claims upon him and his estate. The fraudulent intent in all such cases being the true test of the validity of the transaction. *Ricketts vs. Ricketts, 4 Gill,* 105. There is this difference between the claim of a wife upon her husband's estate, and that of a creditor upon the estate of his debtor; in the latter case a debtor cannot, even by a *bona fide* gift of the whole, or a part of his property to a third person, impede his creditor in the collection of his debt. Under such circumstances, such a transfer would be voluntary, and as against a *bona fide* creditor, void in point of law. Not so as respects the gifts or voluntary transfers by a husband of his property, in relation to the rights of his wife. If not made with the *actual intent* of defeating the rights of his wife, they will be sustained, although they leave her without the means of subsistence." We have quoted the language of the Court at some length, because it expresses clearly the principles of the law, as it is settled in this State, applicable to the delicate and intimate relation between husband and wife, as respects her rights with regard to his property, and her protection against alienations made by him during the coverture, for the purpose of defrauding her claim upon him for maintenance and support.

In that case, her claim was asserted during his life; but it rests upon grounds very analogous to those asserted by the appellant, in support of her bill impeaching the deed of her late husband, to the appellee, dated the 20th day of May, 1872.

To ascertain the intent and purpose with which the deed was made, we must refer to the facts and circumstances attending its execution, and the acts and conduct of the

parties, as disclosed by the evidence; and the first question to be determined arises upon the exceptions to testimony filed by the appellee. These are:

1st. To the competency of the complainant as a witness under the Acts of 1864 and 1868.

2nd. To the admissibility of conversations between the witness and the deceased after the deed was executed.

3rd. To the letters of the appellee, and especially that dated May 26, 1874, (marked Ex., No. 4,) as not proved.

4th. To the 10th and 13th questions to the witness Fowler, as leading and otherwise objectionable.

5th. To the conversations between the deceased Sanborn and the witness Reynolds, as testified to by the latter—which took place after the execution of the deed.

1st. We see no valid legal objection to the competency of the complainant, Mrs. Sanborn, under the evidence Acts of 1864 and 1868. She does not fall within the exceptions in the Act of 1868, ch. 16, as interpreted in *Jones vs. Jones*, 36 *Md.*, 457 ; *Dennison vs. Dennison*, 35 *Md.*, 381, and *Johnson vs. Heald*, 33 *Md.*, 352.

This is not a suit with an executor or administrator, touching a claim for or against the estate of a decedent; nor is it a suit upon, or relating to a contract to which the witness was a party, the other party being dead. In our opinion, Mrs. Sanborn was a competent witness, with respect to the matters upon which she was called to testify.

2nd. We discover nothing in her testimony, to which the second exception can apply.

3rd. Mrs. Sanborn being a competent witness to testify on that point, her evidence sufficiently proved the letters referred to in the third exception.

4th. The 10th and 13th questions asked of the witness Fowler, are not obnoxious to the objection of being leading. The testimony given in response thereto, was to the declarations of the grantor with respect to the deed, and his object and purpose in making it; and being contempo-

raneous with its preparation and execution, was clearly admissible.

5th. As to the declarations of the deceased made to the witness Reynolds, after the deed was executed ; we rule them out as wholly immaterial, without stopping to express any opinion, whether they were not inadmissible on other grounds.

We proceed now to state our conclusions upon the material facts of the case, as established by the proof.

They are *first,* that the deed was merely voluntary, that no valuable consideration for it was given by the appellee. This is abundantly shown by the testimony of Mr. Fowler the conveyancer, as well as by the letters of the appellee, from which it appears that as late as Aug. 28th, 1872, he had never seen the deed, and was ignorant of its terms and contents.

Besides this, there is an absence of proof on his part, of any consideration, the evidence of which, if he had paid any, must have been in his possession. *Shaferman vs. O'Brien,* 28 *Md.,* 575, 576.

And we may add as quite conclusive on this point, that the appellee, in his conversations with the witnesses, Mrs. Hood and Mrs. Sanborn ; while he asserted that he had given value for the property, did not pretend to name any other consideration, except the mortgage of $1000, which was executed by him, upon the property on the 28th day of August, 1872, at the instance of Sanborn to secure the payment of that sum borrowed by him. Doubtless it was with reference to that transaction, that he considered himself justified in stating in his answer, that he had paid a valuable consideration for the deed. But the mortgage was not given till long after the deed was recorded, and was not in contemplation when it was executed. In no sense could the giving of the mortgage constitute any consideration for the deed. Beyond all doubt or question, the deed of the 20th of May, 1872, was wholly voluntary, a

mere gift, made without any valuable consideration whatever passing from the appellee.

2nd. It is conclusively shown by the proof, that the purpose and design of Sanborn in executing the deed, was to deprive his wife of the share of his estate, to which she would be entitled by law, at his death.

He had been informed by his friend and attorney Mr. Reynolds, that this purpose could not be accomplished by making a will; and hence, his application to Mr. Fowler, the conveyancer, to have the deed prepared; stating at the time, that "his object was to deprive her of the property."

3rd. Our conclusion from the whole evidence in the cause, especially from the circumstances attending the execution of the deed, and the powers of attorney; and the conduct of the parties afterwards with reference to the property, that their real purpose and intent were that the beneficial interest, should not be claimed by the appellee till after Sanborn's death. While he lived, the substantial ownership of the property with the control and dominion over it remained with him.

The deed was executed on the 20th day of May, 1872, and recorded the same day in Baltimore, the grantee lived in New Hampshire, never had possession of the deed till after Sanborn's death in July, 1873. Before the deed was executed, a power of attorney was sent on to the appellee and executed by him in New Hampshire, on the 18th day of May, 1872.

By that power of Attorney, Sanborn was authorized, "*to sell and convey, mortgage or otherwise dispose of the property.*" In August, 1872, wishing to borrow $1000, for his own use; one of the pieces of property mentioned in the deed, was mortgaged to secure it. The mortgage and notes were sent on to the appellee to be executed, which was done as a matter of course. The correspondence between the parties shows that the appellee considered that Sanborn had the right to deal with the property as his own.

We do not agree with the Judge of the Circuit Court, in the construction of the appellee's letter of Aug. 28th, 1872. While the writer was evidently solicitous about the personal liability he incurred upon the notes, he expressed no concern about the property. It is apparent from the letter, that he did not question the right of Sanborn to do with the property as he pleased, provided he was saved from pecuniary loss.

It is evident also that up to that time the appellee had never seen the deed and was ignorant of its contents, relying altogether upon the representations of Sanborn.

The facts that the power of attorney was prepared at Sanborn's instance, and sent on to be executed before the deed was made ; that it secured to him the unlimited right of disposing of the property as owner, that he did so deal with it, by having a portion of it mortgaged to obtain money for his own use ; and that he remained in possession of it till his death, which occurred in July, 1873,—conclusively show, that though the deed was absolute on its face, the intent and purpose of the transaction, and of the parties, was that while Sanborn retained dominion and control over the property in his lifetime, his wife should have no part or share of it, after his death.

This being so, the case falls directly within the principles laid down by the Chancellor in *Hays vs. Henry*, 1 *Md. Ch. Dec.*, 337 ; and in *Feigley vs. Feigley*, 7 *Md.*, 561.

The deed was not made *bona fide*, but as respects the appellant was fraudulent, and cannot operate to deprive her of her legal rights as widow and distributee.

The rights of the appellant are not affected by the recording of the deed, and the power of attorney. She had no actual knowledge of their existence till she was informed by the appellee, when he came on to Baltimore to take possession of the property after her husband's death.

So far as appears from the evidence the appellant faithfully performed her duties toward her aged husband as

long as he lived.   In this respect, there is nothing in the testimony to afford any moral justification or excuse for his extraordinary conduct; and we cannot refrain from expressing our gratification, that the law affords her relief and protection against the attempted fraud upon her rights.

The decree of the Circuit Court will be reversed and the cause remanded in order that a decree may be passed declaring the deed of May 20th, 1872, null and void so far as the appellant is concerned, and that she may be relieved against the same, in conformity with the opinion of this Court.

*Decree reversed, and*
*cause remanded.*

(Decided 1st July, 1874.)