ANNA K. WHITEHILL *v.* LAMBERT H. THIESS.

[No. 90, October Term, 1931.]

*Decided January 14th, 1932.*

The cause was argued before BOYD, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Abram C. Joseph,* with whom were *Daniel C. Joseph* and *Alvin Neuberger* on the brief, for the appellant.

*Powell Vickers,* with whom was *Louis J. Jira* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellee, husband, and now widower, of Mary C. Thiess, deceased, has obtained a decree for sale of leasehold property held by the wife in her lifetime, and for distribution of one-third of the proceeds to him as his marital share; the remaining two-thirds to be divided among children and grandchildren of the couple. The children and grandchildren, on appeal, contend that as the property was vested in the wife only for and during her life, with remainder to them, the children and grandchildren, no marital rights in the husband attached, and the remaindermen are entitled to the whole. And to this the husband replies that while, by the terms of the conveyance, the title in the mother may have been restricted to a life estate, that estate had joined with it all rights of disposition and enjoyment regularly incident to complete ownership, except the one incident of forming part of her estate upon death, and that incident was cut off in an effort by her to defraud the husband of his marital rights in her property, and the restriction to the life estate is, because of the fraud, ineffectual, and the estate is now to be treated as subject to those marital rights.

It appears from evidence taken that the husband left his wife and children in the year 1912. The wife brought suit for divorce *a vinculo matrimonii,* but her evidence of the ground for divorce was found lacking in the requisite certainty. *Thiess v. Thiess,* 124 Md. 292, 92 A. 922. After that time, the wife cared for and reared the five younger children of six at home with her, having apparently only small help contributed by the husband under orders of court. He had nothing to do with his family otherwise, paid no attention to the wife's final illness and death, and contributed nothing toward the resulting expenses. He says he was not allowed by the family to come near them. The wife and the children lived a close community life until marriage took some of the children off to separate homes. All the children

took employment, and the testimony is that they turned their earnings over to the mother, and that out of the common fund thus created she maintained the house in which they lived, and supported the children and herself otherwise. There seems to have been no thought among them of any individual rights in the money so collected. One of the sons testified that they just trusted the mother to provide for all from the fund. The property concerned in this proceeding, it was testified, was bought and paid for chiefly, if not altogether, out of this money collected from the children's earnings. It is left uncertain whether any money other than the earnings was used; the oldest daughter testified that there was no other money to go into the purchase, and a son testified that one-third may have come from the mother's share in an estate of her own mother's.

In 1923, seven years before the death of Mary C. Thiess, Joseph T. Zoubeck and wife conveyed the property to her, "for and during the term of her natural life only with full power in the said Mary C. Thiess to lease, mortgage, deed or in any otherwise encumber the property absolutely and after her death and without the exercise of the aforesaid power then an undivided fifth interest each to Anna K. Whitehill, Charles H. Thiess, Rose K. Thiess, Leona Gately and a one-tenth interest each to Evelyn Thiess and Ferdinand G. Thiess as tenants in common." The habendum clause in the deed defined the estate in the same words. The wife died in 1930 without having exercised the power to dispose of or encubmer the estate. That by its terms the deed conveyed only a life interest to Mary C. Thiess, notwithstanding the addition of the powers, seems clear. Several decisions of this court settle the construction in that way. *Benesch v. Clark,* 49 Md. 497; *Cadle v. Cadle,* 152 Md. 459, 136 A. 895; *Foos v. Scarf,* 55 Md. 301. It follows that, according to the terms of the conveyance as they stand, there has been nothing to which marital rights in the husband could attach, for such rights attach only to property which forms part of the wife's estate upon her death. The case is, of course, concerned only

with rights, or a claim to rights, in the wife's estate after her death. *Mason v. Johnson,* 47 Md. 347, 358.

There is no direct testimony that the wife and the grantor in this deed arranged the title so as to avoid the attaching of marital rights in the husband, but it may be presumed that they did so. Then the principles to be considered are those which have been recently explained in the case cited in argument. *Jaworski v. Wisniewski,* 149 Md. 109, 115, 131 A. 40. An attempt to evade the marital rights of one spouse in the estate of the other after death, by preserving to the latter all that complete ownership would give up to death, but disposing in advance of the estate after death, so as to put it out of the surviving spouse's reach, may be defeated by the wronged spouse as a fraud upon him and his rights. But this, we believe, is not to be taken as the invariable result of such a conveyance. The law does not prohibit a wife's holding on these terms without having also an estate transmissible after death. For instance, a gift to the wife on those terms, with remainder over, could not be extended by a court of equity by addition of the estate transmissible beyond her death, even though the grantor and the grantee planned to avoid the husband's marital rights by restricting the gift. The giver would be entirely free to withhold such rights from the husband if he wished. *Janney v. Sprigg,* 7 Gill, 197, 208. For the same reason, if in this case the children had purchased the property with separate funds of their own, and desiring to retain for themselves whatever the mother did not dispose of, had excluded from the grant to her any estate transmissible after her death, it would hardly be doubted that the husband would have no ground for attacking the arrangement as a fraud upon his rights. The children would have been entirely free to exclude him. The evidence here presents a case close to that just supposed, but perhaps in strict law the money which was turned over by the children to the mother became her money, especially as much of it was apparently paid over during the minority of some of the children, and perhaps therefore the situation to be dealt with is that the mother purchased the property with her own

money derived chiefly from her children's earnings. But even if this be correct, the arrangement of title would seem to have been a reasonable and just one, in view of the source of the purchase money, and the common purpose for which the children's earnings were turned over to the mother. And if it was so reasonable and just that the husband be left no marital rights if he survived the mother, must the court nevertheless consider this a fraud on those rights, and extend the mother's title beyond the terms of the conveyance in behalf of those rights? For illustration, if we suppose that the husband in such a case as this had ample means of his own, while the children had none beyond their further earnings, would a court of equity be required to take its rule for avoiding fraud on his surviving rights as an absolute and invariable one, and to extend the title on his behalf? This court does not regard the rule as commanding that result. The rightfulness of the arrangement from the point of view of fairness to the children who furnished most of the money seems to us to save it from being a wrong upon the husband and the marital rights which a court of equity might otherwise consider should be secured for him.

Our attention has not been called to any decision on exactly this state of facts, but there are analogous cases in which the conclusion seems supported. It has been a rule that a secret antenuptial conveyance made to avoid the attaching of marital rights may be set aside as a fraud upon those rights. *Waters v. Tazewell,* 9 Md. 291, 307; *Moody v. Hall,* 61 Md. 517, 525. Yet the courts have held in many cases that, when under particular circumstances it has been reasonable and just to convey property beyond reach of those rights, courts of equity will not interfere with the conveyance. "From the decisions," says *Schouler on Domestic Relations,* 270, "it would appear that some alienations of the wife's property without her intended husband's knowledge will be allowed to stand. The facts are always open to inquiry, and it seems that the court is warranted in considering such circumstances as the meritorious object of the conveyance and the situation of the husband in point of pecuniary means." *Adams, Equity,*

406; *Bigelow, Fraud,* 51; *Story, Equity Jurisprudence,* sec. 273. And in one case frequently cited on the point, in which a husband on the eve of a second marriage had conveyed property to children of his first marriage, and the conveyance was upheld nevertheless, the court said: "Perhaps this property had been bought with money belonging to their mother, or, if not, it may have been the accumulation of the joint industry and saving of their mother and himself, and it was fitting that the title should be passed to them before he contracted any new matrimonial alliance. Certainly, it would seem a misnomer to call such a transaction fraudulent." *Butler v. Butler,* 21 Kan. 521, 528 (Brewer, J.). See *Jones v. Jones,* 213 Ill. 228, 72 N. E. 695; *Champlin v. Champlin,* 16 R. I. 314, 15 A. 85; *Dudley v. Dudley,* 76 Wis. 567, 45 N. W. 602.

Upon this reasoning we hold that the limitation to a life estate, and the remainder to the children only, in the present conveyance, are valid, and that the husband is entitled to no share in the property or the proceeds of its sale if it is sold.

*Decree reversed, with costs to the appellant.*