MATILDA F. GROVE *v.* VERNON G. FRAME, Personal
Representative of the Estate of
Herbert R. Grove et al.

[No. 117, September Term, 1978.]

*Decided August 21, 1979.*

The cause was argued before Murphy, C. J., and Smith,
Digges, Eldridge, Orth, Cole and Davidson, JJ.

*Thomas N. Clifford* for appellant.

*K. King Burnett,* with whom were *Webb, Burnett & Duvall* on the brief, for appellees Irvin and Beatrice Catlin; *Archie C. Hall* and *Dietz, Ebersberger, Duvall & Hall, Chartered,* on the brief for appellee Vernon G. Frame, Personal Representative.

COLE, J., delivered the opinion of the Court.

In this case we are asked to decide whether a husband's absolute and unconditional transfer of his residence to a third party for nominal consideration and with the avowed purpose of forcing his wife to leave the property, can be set aside by his wife after his death as either a fraud on her right to alimony and support or on her right to share in his estate.

The appellant, Matilda F. Grove, married her now deceased husband, Herbert R. Grove, on November 22, 1970. The appellant was then 58; Herbert was 76. It was the appellant's second marriage and Herbert's third. Herbert's first wife had died and he had been divorced from his second wife for some seven years. No formal oral or written agreements of any sort were made between the appellant and Herbert, either ante- or post-nuptial.

At the time of his marriage to the appellant, Herbert owned a home at 8557 Bay Road, Riviera Beach, Anne Arundel County, which is now valued at approximately $100,000.00. The house had been built forty or fifty years ago and apparently was Herbert's home during both of his prior marriages. Herbert had no children. His closest relative was a niece, Dorothy Mayes. His closest friends were Mr. and Mrs. Irvin Catlin of Wicomico County.

Herbert was retired and lived off his income from securities, which amounted to about $30,000 annually. Upon their marriage and at Herbert's request the appellant stopped working, sold her home in Baltimore City, moved into the Bay Road residence, and assumed the role of housekeeper. However, within six months marital difficulties developed. Herbert became abusive. He denied her sufficient funds for the household and for her special diabetic diet and generally

denied appellant the social amenities consonant with a marital relationship.

When in the early part of 1972 Herbert stopped giving her any money at all, the appellant lived off her own small savings for a while but then was forced to return to work despite her age and poor health. Herbert had a stroke in the fall of 1973. He persuaded the appellant to quit her job to take care of him and promised to give her forty dollars a week. Yet he stopped paying her any money again after a month, and the appellant again resumed work. In December of 1973 Herbert left the appellant and stayed with his niece for a month. When he returned home in January 1974 Herbert again refused to give the appellant any money and brought in a housekeeper and a companion for himself.

On April 4, 1974, the appellant filed a bill of complaint for permanent alimony in the Circuit Court for Anne Arundel County alleging cruelty. The case was scheduled for a hearing on the merits on October 3, 1974. On September 5, 1974 Herbert transferred his life estate in the Bay Road property to the Catlins for $1.00 "and other good and valuable considerations;" he had already given his remainder interest in the property to the Catlins in 1972. Then, on September 17, 1974 Herbert entered into a written agreement with his niece and her husband whereby they agreed to care for him for the rest of his life in exchange for some $22,000 in cash and $123,000 worth of securities and their agreement to pay a $58,000 debt of Herbert's out of the proceeds from the sale of the securities. Sometime that same month Herbert moved out of the Bay Road house and went to live at his niece's home.

Prior to September, 1974 Herbert discussed these transactions with Vernon G. Frame, appellee, who was Herbert's attorney and is now personal representative of his estate. Irvin Catlin was also present at these meetings. Herbert announced that his purpose for making the conveyances was to force the appellant to leave the Bay Road property. Herbert openly anticipated that the Catlins, as the new owners of the property, would give the appellant notice to leave or find another means to effect the same end.

The alimony hearing was finally concluded on December 3, 1974, when the court issued a decree sustaining the appellant's allegations of cruelty and ordering Herbert to pay the appellant one hundred and fifty dollars every fifteen days as permanent alimony. Irvin Catlin, the grantee of the Bay Road property, was present at the alimony hearing, and thereafter notified the appellant that if she wanted to stay in the house he would charge her $300 a month rent. As appellant could not afford to pay virtually all the alimony she received toward housing, she moved to an apartment in January, 1975.

Herbert initially complied with the circuit court decree, but as of March 15, 1975 stopped making alimony payments. Two show cause orders were issued by the court during 1976 in response to the appellant's petitions for contempt as to arrearages of alimony. Finally, on January 5, 1977 Herbert paid in full all arrearages and thereafter made timely payments until his death on March 16, 1977. As to the date of his death, Herbert's total remaining gross assets were valued at approximately $40,000.

The instant case commenced on April 21, 1977, when the appellant filed a bill of complaint in the Circuit Court for Anne Arundel County against appellee Frame as personal representative of Herbert's estate and against appellees Irvin and Beatrice Catlin to set aside the conveyance of the Bay Road property to the Catlins as fraudulent because it was designed to defeat the appellant's rights to alimony and to share in the estate of her husband. On June 6, 1978 the circuit court granted the appellees' motion to dismiss. The court first ruled that the alimony issue was moot because the parties had stipulated that the alimony, though late, was in fact paid in full up to the time of Herbert's death. The court then held that since the gift of the Bay Road property by Herbert to the Catlins was complete, absolute, and unconditional, it was not fraudulent with respect to the appellant's marital rights as a surviving spouse. The court also stated that it was not required to look to any factors besides completeness of the transfer in reaching its decision.

On June 8, 1978 the appellant filed an order for appeal to

the Court of Special Appeals. We granted certiorari prior to any hearing before that court to consider (1) whether Herbert's conveyance of the Bay Road property constituted a fraud on the appellant's right to alimony and support and (2) whether the same transfer amounted to a fraud on the appellant's right to share as a surviving spouse in her husband's estate.

The first question before us, whether any fraud was perpetrated on the appellant's right to alimony and support, is moot. While it is unquestionably established in Maryland that an alimony decree in favor of a wife entitles her to be protected from fraudulent conveyances by her husband of his property, *Oles Envelope Corp. v. Oles,* 193 Md. 79, 65 A. 2d 899 (1949), and that this protection extends to fraudulent conveyances made just prior to an award of alimony, *Levin v. Levin,* 166 Md. 451, 171 A. 77 (1934), in the strict sense alimony means nothing more or less than "a periodical allowance during the joint lives of the spouses for the wife's support and maintenance . . . ." *Winkel v. Winkel,* 178 Md. 489, 498, 15 A. 2d 914 (1940). Since the death of either spouse terminates the obligation to pay, Herbert's legal duty to support the appellant in this fashion lasted only from the December, 1974 decree until the date of his death.

Here the parties have stipulated that although periodic arrearages existed during the separation, alimony payments were in fact current at the time of Herbert's death. This Court has stated that "[w]here, by act of the parties . . ., the controversy has come to an end, the case becomes moot and should be treated accordingly." *Davis v. State,* 183 Md. 385, 390, 37 A. 2d 880 (1944). We agree with the circuit court that the alimony question is moot.

The appellant next asks us to hold that the Bay Road property is still a part of Herbert's estate on the theory that the conveyance to Catlin was contrived to defeat her right to share as a surviving spouse. Her argument readily recognizes the settled law that a widow is entitled to no part of her husband's estate except that of which he died seized or possessed. *See Fitzpatrick v. Mer.-Safe, Etc., Co.,* 220 Md. 534, 554, 155 A. 2d 702 (1959); *Bullen v. Safe Dep. & Tr. Co.,*

177 Md. 271, 278, 9 A. 2d 581 (1939); *Pacholder v. Rosenheim,* 129 Md. 455, 458, 99 A. 672 (1916); *Matthews v. Targarona,* 104 Md. 442, 453-54, 65 A. 60 (1906).

The record makes clear to us that Herbert did indeed convey with the specific purpose of reducing the size of his estate at his death. However, our prior decisions dealing with the right of a husband to transfer the title to his personal property have recognized that he has this right, provided he relinquishes all dominion and control over the property during his life time. In *Rabbitt v. Gaither,* 67 Md. 94, 104-05, 8 A. 744 (1887), Judge Miller stated:

> [A] husband may alienate his personal property and his equitable interest in land, either by sale or gift, without the concurrence or assent of his wife, and if the transfer be absolute and unconditional, and without any reservation of interest in, or control over, the property to himself, and if the possession be parted with or delivered in pursuance of the conveyance, it is valid even though his intent and purpose in making it, may have been to deprive his wife of her dower of thirds therein, provided there be no fraudulent participation on the part of the grantee or donee in such intent or purpose. In fact, this power of the husband over such property, has been so long recognized by the courts, and so often exercised, as to have become not only a well-established principle of law, but a settled rule of property upon which a large number of titles depend. But on the other hand, if the transfer be colorable merely, that is to say, if it be a mere device or contrivance by which the husband does not part with the absolute dominion over the property during his life, but seeks thereby to defeat the claims of his widow at his death, the law pronounces it a fraud upon her rights, and this fraud may be proved and established by his retention of possession, during his life, by a reservation of an interest to himself on the face of the conveyance, or by an outside agreement or arrangement between him and his grantee or

donee, to the effect that he shall receive the benefit of, or have control over, the property, during his life, or by any other fraudulent participation on the part of the grantee or donee to aid him in his purpose of defeating the rights which the law gives to his widow upon his death.

*See also Mushaw v. Mushaw,* 183 Md. 511, 39 A. 2d 465 (1944); *Bestry v. Dorn,* 180 Md. 42, 22 A. 2d 552 (1941); *Bullen v. Safe Dep. & Tr. Co.,* 177 Md. 271, 9 A. 2d 581 (1939); *Whitehill v. Thiess,* 161 Md. 657, 158 A. 347 (1932); *Sturgis v. Citizens Nat. Bank,* 152 Md. 654, 137 A. 378 (1927); *Jaworski v. Wisniewski,* 149 Md. 109, 131 A. 40 (1925); *Poole v. Poole,* 129 Md. 387, 99 A. 551 (1916); *Brown v. Fidelity Trust Co.,* 126 Md. 175, 94 A. 523 (1915); *Collins v. Collins,* 98 Md. 473, 57 A. 597 (1904); *Duttera v. Babylon,* 83 Md. 536, 35 A. 64 (1896); *Sanborn v. Lang,* 41 Md. 107 (1874); *Feigley v. Feigley,* 7 Md. 537 (1855); *Hays v. Henry,* 1 Md. Ch. 337 (1848) Sykes, *Inter Vivos Transfers in Violation of the Rights of Surviving Spouses,* 10 Md.L.Rev. 1 (1949).

Prior to 1970, the test to determine whether there had been a fraud on a widow's marital rights applied to personalty only because the transfer of legal title to real property, without the wife's consent, did not destroy her right of dower upon her husband's death.

However, when the General Assembly abolished the estates of dower and curtesy by Chapter 3, § 1 of the Laws of Maryland 1969, now Code (1974), § 3-202 of the Estates and Trusts Article, it effectively destroyed any valid distinction between the rights of a surviving spouse to share in the personalty or real property of the deceased spouse. Therefore the only manner in which a widow may now seek to set aside an inter vivos transfer of property made by her husband is by proof that he defrauded her by not absolutely and unconditionally relinquishing control over the property during his lifetime. In the absence of fraud, the only interest she can assert in lieu of taking under her husband's will is to a share of the property owned by her deceased husband at the time of his death. *See* Code (1974, 1978 Supp.), §§ 3-102, 3-203 of the Estates and Trusts Article.

In the instant case, it is clear that Herbert retained no control over the Bay Road property. He had transferred his remainder interest to Catlin in 1972 and followed that with a transfer of his life estate to Catlin in 1974, three years before his death. Thus, his conveyance to Catlin of all his interest in the Bay Road property was complete, absolute and unconditional.

We conclude, therefore, that no fraud was committed upon the appellant's marital rights to share in her husband's estate since the subject property was not a part of his estate at his death. We affirm the judgment of the circuit court.

*Judgment of the Circuit Court for Anne Arundel County affirmed; appellant to pay the costs.*