848 A.2d 673

**Alvin FRATER and Milton Williams, Personal Representatives of the Estate of Saul Feld**

v.

**David B. PARIS, Trustee of the Adele Feld Revocable Trust.**

**No. 0775, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

May 3, 2004.

Benjamin Lipsitz, Baltimore (S. Leonard Sollins, on the brief), Owings Mills, for Appellant.

Michael F. Curtin (Thomas E. Dunigan, Curtin, Law, Roberson, Dunigan & Salans, on the brief), Washington, DC, for Appellee.

Panel: SALMON, SHARER, LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY (retired, specially assigned), Judge.

Here we are asked to determine the proper distribution of the assets of Saul Feld, who died testate on March 9, 1997, leaving a multi-million dollar estate. Alvin Frater and Milton Williams, the personal representatives of Mr. Feld's estate, appellants, challenge an order of the Circuit Court for Montgomery County, exercising the jurisdiction of an orphans' court (hereinafter Orphans' Court), directing them to amend their Revised Sixth and Final Administration Account (the Final Account). Mr. Feld's widow, Adele Feld, timely had elected to take a statutory share of her husband's estate. The

order directs the appellants to credit Adele Feld with one-half of the net value of the estate as of the time of distribution, rather than as of the time of Mr. Feld's death, as appellants had proposed. David Paris (Paris), the trustee of the Adele Feld Revocable Trust, appellee, the assignee of Adele Feld's interest, represents Mrs. Feld's interests in this case.

The Personal Representatives present the following question for our review:

"Did the [Orphans' Court] err when it ordered on May 22, 2003 that Mrs. Feld, as electing surviving spouse, 'is to receive one half of the net estate for distribution, . . . and including fifty percent (50%) [of] all income earned on estate assets up to the date of distribution,' because: (a) she was not entitled to a statutory share of any part of her late husband['s] estate except that of which he was seized or possessed when he died, and (b) her share was fixed and limited at and as of the date of his death and not at any subsequent date of distribution?"

For the reasons set forth below, we shall dismiss the appeal.

## FACTS AND LEGAL PROCEEDINGS

Three days after Mr. Feld's death, on March 12, 1997, his will was submitted to the Register of Wills for Montgomery County. On March 21, Mrs. Feld timely elected to take her statutory share, *i.e.*, fifty percent of the estate,[1] rather than any bequest to her under her husband's will. After an auditor in the Register of Wills' office questioned the distribution in the proposed Final Account that had been filed on April 30, 2002, the appellants, by letter of August 30, 2002, requested a hearing "to resolve the determination of the amount due Adele Feld[.]"

---

1. Because the Felds had no issue, Mrs. Feld's statutory share was fifty percent. Md. Code (1974, 2001 Repl. Vol.), § 3–203(a) of the Estates & Trusts Article (ET) ("Instead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue").

The Personal Representatives formally petitioned the court on October 23, 2002, to accept the Final Account. Their petition explained:

"Your Petitioners calculated [Mrs. Feld's] share to be $1,202,089.45, which is one-half of the decedent's gross estate on March 9, 1997, $2,404,434.88, less debts owed by decedent, $255.98, leaving a net estate of $2,404,178.90, all in accordance with *Grove v. Frame,* 285 Md. 691, 402 A.2d 892 (1979), as stated in the annotation to Sec 3–203 of the Estates and Trusts Article, that 'In the absence of fraud, the only interest a widow can assert in lieu of taking under her husband's will is to a share of the property owned by her deceased husband at the time of his death.' " [2]

Paris opposed the distribution proposed in the Final Account, asserting that Mrs. Feld's share was a fifty percent interest in the net estate, calculated at the time of *distribution* rather than on the date of her husband's death.

On May 2, 2003, after a hearing on the issue, the court ruled:

"[F]or the purposes of this case, the Court directs the personal representatives to correct the computation in the account and reflect the share of Adele Feld to include the assets plus any realized gain in income as opposed to excluding same."

A docket entry, dated May 2, 2003, reads: "Minutes of hearing on the petition to accept sixth and final account. Denied (see file)[.]"

Thereafter, on May 22, 2003, the Orphans' Court issued a written order, the relevant part of which stated:

"ORDERED, that the Personal Representatives shall forth-with restate the Sixth and Final Account to properly reflect that she, Adele Feld, or her assignee, is to receive one half

---

2. The Personal Representatives also explained that they had provided for payment of a $5,000 family allowance to Mrs. Feld. They withheld from Mrs. Feld's share direct inheritance tax of $11,020.89, and did not deduct any Federal or State estate tax.

of the net estate for distribution, after deduction for the payment of debts of the decedent and expenses of administration, but without deduction for Federal Estate or Maryland Estate taxes paid by the estate, and including fifty percent (50%) of all income earned on estate assets up to the date of distribution."

A docket entry for that date reads: "Order of court approving restated second and final account ... (ROW note: Should read order directing restated sixth and final account be filed)." The Personal Representatives noted this appeal on June 23, 2003.

## DISCUSSION

### Preliminary Issues

■ Paris asserts that the appeal is not properly before us. He argues, first, that the Personal Representatives lack standing to appeal the order of the Orphans' Court because they, in their representative capacities, were not "aggrieved" by that order.

Second, he contends that the appeal was untimely. He submits that the May 2, 2003 oral ruling, when entered on the docket sheet, constituted the "final judgment," rather than the May 22, 2003 written order that was docketed that day.

In support of his argument on standing, Paris relies on a number of Maryland cases, which we shall review below.

In *Webster v. Larmore*, 270 Md. 351, 311 A.2d 405 (1973), the personal representative sought an order in the orphans' court directing distribution of the residue of the testator's estate to certain beneficiaries. The court directed that these monies be distributed differently than the personal representative had suggested. Thereafter, the personal representative appealed, but the Court of Appeals held that the appeal was not properly before it. The Court reasoned:

"[O]nce a will has been construed by an equity court, a personal representative is bound to make distribution in accordance with that court's order, since the personal repre-

sentative is fully protected by it . . . . We see no reason why the same rationale should not be applied to the order of an orphans' court directing distribution particularly when [Md. Code (1957, 1973 Cum. Supp.),] Art. 93, § 9–112(c), under which [the personal representative] acted, specifically granted him protection[.]"

*Id.* at 354, 311 A.2d at 406.[3] Because the personal representative was fully protected, he "could be in no way aggrieved[.]" *Id.* Further, since the appeal in no way benefited the estate, the Court held, "the estate should not be reduced by an appeal from which it would gain no advantage[.]" *Id.*

In *Alston v. Gray,* 303 Md. 163, 492 A.2d 900 (1985), the personal representative, after having been informed that the testator may have fathered an unborn child, filed in the orphans' court a petition for instructions regarding the final distribution of the assets of the estate. After conducting a legitimacy hearing, the orphans' court directed the personal representative to list the unborn child as an interested party in subsequent proceedings, and to allocate a distributive share of the testator's assets to the unborn child. The personal representative appealed the order, but the Court of Appeals dismissed the appeal as not properly before it because the personal representative was not aggrieved by the order from which she appealed. The Court outlined the reasons for this rule as follows:

"First, . . . once a court determination is made, a personal representative is bound to make distribution in accordance with the order, and is fully protected by it. Second, an unrestricted right of appeal would subject the court to a myriad of collateral and incidental matters, and 'would open the door to appeals presenting issues which might well be moot, or seeking opinions on abstract propositions.' To these formerly articulated reasons, we also recognize that an unlimited right of appeal, in the hands of the executor or representative, could seriously deplete a small estate and

3. Former Article 93, § 9–112(c) is now ET § 9–112(c).

might delay indefinitely the distribution of the estate assets to deserving heirs."

*Id.* at 167, 492 A.2d at 902 (quoting *Webster,* 270 Md. at 353, 311 A.2d at 406).

*Buchwald v. Buchwald,* 175 Md. 103, 199 A. 795 (1938), involved an executor who filed, both in his individual and representative capacities, a bill in the orphans' court against the heirs at law, requesting the court to determine the legal effect of the bequests in the will. The orphans' court held a number of provisions in the will to be inoperative and void. The executor appealed that order, in both his individual and representative capacities. After determining that the orphans' court indeed had erred in invalidating certain provisions in the will, including some affecting the executor, individually, the Court of Appeals dismissed, for lack of aggrievement, the appeal by the executor in his representative capacity. *Id.* at 114, 199 A. at 800.

The executor in *Surratt v. Knight,* 162 Md. 14, 158 A. 1 (1932), requested an orphans' court to determine the validity of the residuary clause of the will, and to determine the validity and effect of assignments made by the residuary legatees under a compromise settlement agreement with the testator's daughter. The orphans' court dismissed the complaint and the executor appealed. Concluding that the executor was not aggrieved, either individually or in his representative capacity, the Court of Appeals dismissed the executor's appeal, holding:

"[A]fter the dismissal by the chancellor, the executor had no personal interest in further litigation. There is no question affecting the proceeds of the testator's estate in his hands for distribution, no doubt of who the residuary legatees are, nor of their identity and of their capacity to take. The executor's commissions and allowances are not involved, and he has no interest in the fund to be divided. Every one but the executor is satisfied, and no one has united in the appeal. It does not appear from the record that the executor has in any capacity such an interest in the subject-

matter as entitles him to appeal, and therefore this appeal must be dismissed."

*Id.* at 17, 158 A. at 2.

In *Grabill v. Plummer*, 95 Md. 56, 51 A. 823 (1902), an administratrix petitioned an orphans' court to allow attorney's fees, after she successfully had defended a caveat to the will. The court granted the request, but ordered that the counsel fees be deducted only from the share of those beneficiaries taking under the will, and not from the share of the testatrix's widower, who had elected a statutory share of his deceased wife's estate. Dismissing the administratrix's appeal from the orphans' court's order, the Court of Appeals held that the administratrix "ha[d] no interest in the subject-matter of the appeal, and [could] not be aggrieved by the passage of the order." *Id.* at 60, 51 A. at 824.

Here, there is no appeal by any of the legatees whose participation in the distribution of income earned during administration would be reduced in a Final Account, revised to comply with the order of the court below.[4] Under the cases reviewed above, the personal representatives have no standing to appeal the order of the court below. Accordingly, the appeal will be dismissed.[5]

### The Merits

■ In light of the possibility of further appellate review, judicial efficiency prompts us also to address the merits. These turn on the construction of the controlling statute, ET § 3–203. It is best understood in its historical context.

Md.Code (1924), Article 93, § 311, in relevant part, stated:

---

4. One of the personal representatives, Alvin Frater, is also a legatee, but he has appeared below and in this Court only in his capacity as a personal representative.

5. Thus, we have no need to decide the appellee's alternate ground for dismissal, the asserted lack of timeliness of the appeal. But see Maryland Rule 6–171 and *Anthony v. Clark*, 335 Md. 579, 593, 644 A.2d 1070, 1077 (1994) ("Rule 6–171(b), we hold, simply requires that it be noted on the docket in an orphans' court that an order has been filed relative to some previously filed paper").

"If the election be of the legal share of both real and personal estate, the surviving husband or wife shall take one-third of the lands, as an heir, and one-third of the surplus personal estate (if the deceased spouse shall be survived by descendants) and one-half of the lands, as an heir, and one-half of the surplus personal estate (if the deceased spouse shall not be survived by descendants) and no more."

The Court of Appeals interpreted "surplus personal estate" in this statute in *Gardner v. Mercantile Trust Co. of Baltimore*, 164 Md. 280, 280, 164 A. 663, 665 (1933). The orphans' court dismissed exceptions to an account in which the executor had credited to the surviving spouse, who had elected her statutory share, one-half of the estate balance at the time of distribution. The Court of Appeals affirmed the approval of the account, interpreting "surplus personal estate" to mean "the entire balance of personal estate, principal and income, at the time of distribution." *Id.* at 283, 164 A. at 665. The Court explained that whether a surviving spouse elects to take under the will or a statutory share, the surviving spouse is "entitled to possession only at the time of distribution; the amount in the one case being fixed in advance by the will, in the other being undetermined until ascertainment of the surplus for distribution." *Id.* at 282–83, 164 A. at 664–65. The *Gardner* holding was applied in *Mercantile Trust Co. of Baltimore v. Schloss*, 165 Md. 18, 31, 166 A. 599, 604 (1933).

In Md. Code (1957, 1964 Repl. Vol.), former § 311 appeared as part of Article 93, § 329(b). In 1969, as a result of the proposals of the Henderson Commission, former § 329 was revised, and the provisions conferring the right of election and the proportion of the elective share were separated. The former, codified as Article 93, § 3–203, in relevant part read: "The surviving spouse may elect to take, in lieu of such property, if any, as may be left to him by will, the share which he might take in intestacy ..., except that under no circumstances may the surviving spouse who makes such an election take more than the share described in subsection (3) of § 3–

102 [specifying shares in intestacy]." [6]  Md. Code (1957, 1969 Repl. Vol., 1969 Cum. Supp.), Article 93, § 3–203. Incorporated § 3–102 referred to a surviving spouse's share of the "net estate." *Id.* §§ 3–101 and 3–102.

In 1974, former Article 93 was revised and recodified in the Estates and Trusts Article. Former § 3–203 became Md. Code (1974), ET § 3–203 and read:

"(a) *General.*—Instead of property left to him by will, the surviving spouse may elect to take the share which he might take in intestacy under § 3–102.

"(b) *Limitation.*—The surviving spouse who makes this election may not take more than the share described in § 3–102(d)."

The statute next was amended by the Acts of 1978, ch. 111. At that time, subsection (c) was added, which read: "(c) *Calculation of net estate.*—For the purposes of this section, the net estate shall be calculated without a deduction for the tax as defined in § 11–109." Md. Code (1974, 1978 Cum. Supp.), ET § 3–203(c).  Subsection (a) was revised at that

---

**6.** The Henderson Commission's comment to former Article 93, § 3–203 advises:

"Through incorporation of the provisions of § 3–102 as determining the amount of the elective share, the proportional interest of the spouse under former law . . . is retained.  The limitation upon the amount which may be received by the surviving spouse contained in § 3–102 would also be applicable in this situation and is derived from prior Maryland law.

"This section is intended to be available to a surviving spouse whether or not any provision for him has been made in the will." Md. Code (1974), Comment following ET § 3–203.

The Henderson Commission, led by former Chief Judge of the Court of Appeals William L. Henderson, was commissioned by former Governor Tawes to review and revise Maryland testamentary law. *Shipley v. Matlack,* 139 Md.App. 459, 466 n. 4, 776 A.2d 74, 78 n. 4, *cert. denied,* 366 Md. 249, 783 A.2d 223 (2001).  In its Second Report, issued on December 5, 1968, the Commission recommended a comprehensive recodification and revision of Maryland testamentary law.  Creation of the Estates and Trusts Article followed in 1974. *Genesis Health Ventures, Inc. v. Muller,* 124 Md.App. 671, 675 n. 2, 723 A.2d 556, 558 n. 2 (1999).  "The explanations of the Henderson Commission were published as comments to the various sections of former Article 93[.]" *Kann v. Kann,* 344 Md. 689, 715, 690 A.2d 509, 521 (1997).

time to specify that the share that a surviving spouse may elect is, *inter alia*, "a one-half share of the net estate" if there is no surviving issue. In subsection (b), the words "one-half share of the net estate" were substituted for "the share described in § 3–102(d)." A 1992 amendment simply substituted a reference to a section of the Tax–General Article in subsection (c), in place of ET § 11–109.

The result of these amendments is the version of ET § 3–203 that was in force at the time of Mr. Feld's death, and which is the subject of this appeal. It provides:

"(a) *General.*—Instead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue.

"(b) *Limitation.*—The surviving spouse who makes this election may not take more than a one-half share of the net estate.

"(c) *Calculation of net estate.*—For the purposes of this section, the net estate shall be calculated without a deduction for the tax as defined in § 7–308 of the Tax–General Article." [7]

Md. Code (1974, 2001 Repl. Vol.), ET § 3–203. The term "net estate" is defined in ET § 1–101, as "the property of the decedent exclusive of the family allowance and enforceable claims against the estate, except as used in §§ 3–102 and 3–203." [8]

---

**7.** Had Mr. Feld died on or after October 1, 2003, this appeal likely would not be before us. This is because, by Chapter 234 of the Acts of 2003, effective on October 1, 2003, the Legislature amended ET § 3–203 to specify that the spouse who elects a statutory share is entitled to a share of the net estate as of the time of distribution. Current ET § 3–203(e) states: "For the purposes of this section, a surviving spouse who has elected to take against a will shall be entitled to the surviving spouse's portion of the income earned on the net estate during the period of administration based on a one-third or one-half share, whichever is applicable." Md. Code (1974, 2001 Repl. Vol., 2003 Cum. Supp.), ET § 3–203.

**8.** The exception to the ET § 1–101 definition of "net estate" for ET §§ 3–102 and 3–203 is required because ET § 3–102(f) and ET § 3–203(c) each provide:

The appellants deny the applicability of *Gardner*, asserting that it was decided under a statute that is no longer in effect. Paris contends that the holding of *Gardner* is just as applicable to the 1997 version of ET § 3–203 as it was to Md. Code (1974), Article 93, § 311. He argues that in "[r]eplacing the use of a decedent's surplus personal estate and realty as the basis for calculating the intestate share of a surviving spouse renouncing a will [with the "net estate"], the net estate was clearly intended [by the Legislature] only to effectuate the merger of real and personal property." Our review of the statute's evolution reveals nothing to suggest that the Legislature, through its amendments, or the Henderson Commission, in its recommendations to the Legislature, intended to change Maryland law under which the elective share participates in income produced during administration.

The Personal Representatives urge us to extrapolate upon the reasoning of *Grove v. Frame*, 285 Md. 691, 402 A.2d 892 (1979), an action by a widow against her late husband's estate. The parties had experienced significant marital discord, and the wife had filed a complaint seeking alimony. Between the time that the alimony complaint was filed, and the date of the hearing on that matter, the husband, for a nominal consideration and for the purpose of forcing his wife out of the home, conveyed away the home. He had owned the home prior to their marriage, and it remained titled solely in his name until conveyed. The wife contended that the conveyance was a fraud, committed by the husband during his lifetime, on her rights, either to alimony or to share in his estate. Holding that the husband had every right to convey away the property before his death, the Court of Appeals commented that "a widow is entitled to no part of her husband's estate except that of which he died seized or possessed." *Id.* at 695, 402 A.2d at 895. Because the husband relinquished all control of the home during his lifetime, that property could not be

---

"For the purposes of this section, the net estate shall be calculated without a deduction for the tax as defined in § 7–308 of the Tax–General Article."

The exception does not affect the issue before us.

considered part of his estate at death. *Id.* at 696, 402 A.2d at 895. Referencing the wife's claim of fraud, the Court stated that the wife could only set aside her husband's transfer of the home by providing proof that he defrauded her by failing fully to relinquish control over the property. In this context, the Court explained: "In the absence of fraud, the only interest she can assert in lieu of taking under her husband's will is to a share of the property owned by her deceased husband at the time of his death." *Id.* at 697, 402 A.2d at 896.

The Personal Representatives conclude from the quoted language that only the value of assets held by the decedent at the moment of death forms the basis for calculating a surviving spouse's elective share. It is clear, however, from reading the statement in context that the Court of Appeals was holding that only property actually owned, *i.e.*, property that the decedent holds an interest in, at the time of his death, is included in his estate. As such, *Grove* says nothing about how the intestate share of a surviving spouse is calculated from that estate. Significantly, *Grove* in no way concerned the elective share statute. It concerned the gross probate estate. Literally to apply the election statute to the probate estate as of the moment of death would clash with the plain language of ET § 3–203 which directs, *inter alia,* that creditors be paid before calculating the elective share on the net estate. *Grove* is inapposite.

**APPEAL DISMISSED.**

**COSTS TO BE PAID BY APPELLANT.**