569 A.2d 636

**Violet E. KNELL**

v.

**Jesse Annabelle PRICE.**

**No. 3, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 8, 1990.

Elise Davis, Chestertown, for petitioner.

Robert H. Strong, Jr., Chestertown, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL *, JJ., and CHARLES E. ORTH, Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Judge, Specially Assigned.

The drama which was revealed by the institution of this case in the Circuit Court for Kent County had a cast of three: William A. Knell—the husband, Violet E. Knell—his wife, and Jesse Annabelle Price—the "other woman." After some 22 years of marriage, Mr. and Mrs. Knell separated. The terms of the separation were never spelled out in a written agreement, nor did the separation ever culminate in a divorce. When Mr. and Mrs. Knell went their separate ways, Mr. Knell's way was to live with Miss Price. For 27 years, thereafter, until Mr. Knell's death on 12 July 1987, he and Miss Price enjoyed a relationship akin to that of a marital status, but it was not imprinted with the legality which would have been bestowed by a marriage. As Miss Price states in her brief, she "served as his nurse during

---

* BLACKWELL, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

illness, homemaker, cook, and companion." She "contributed to the maintenance and care of [the several homes in which they lived]." They had a joint checking account. She acted as his "bookkeeper," and when Mr. Knell was ill, she wrote checks drawn on the account, payable to the order of Mrs. Knell for her support and sent them to her.

At the time of Mr. Knell's death, the couple were living in a dwelling in Rock Hall, Kent County, Maryland, purchased by Mr. Knell about 10 years before for $34,000. The property was conveyed to him alone, in fee simple absolute, by a deed from the sellers dated 16 October 1978. On 19 December 1978 two deeds, prepared at the instance of Mr. Knell by Anthony Libersky, Mr. Knell's attorney, were executed and duly recorded, transferring the property. Each deed recited that the conveyance was "for good and valuable consideration" but noted that there was "no monetary consideration." The first deed conveyed the property in fee simple to Libersky, designated therein as "Trustee." The second deed, by its granting clause, conveyed the property to Mr. Knell in fee simple. The habendum, however, read:

TO HAVE AND TO HOLD the said lot or parcel of land and premises, unto and to the use of the said William A. Knell for and during the term of his natural life, with the full power unto him to sell, mortgage, lease, convey and dispose (except by Last Will and Testament) of the whole and entire estate in the same property at any time he may deem expedient, without the purchaser or purchasers, mortgagee or mortgagees, lessee or lessees, or other persons taking title from him, being required to see to the application of the purchase or mortgage money, or the consideration paid for the disposal of said property; it being also the intention of these presents that the exercise by said William A. Knell of the powers hereinbefore enumerated and granted unto him, when and as exercised shall operate upon and there shall pass hereunder unto the grantee or grantees, mortgagee or mortgagees, lessee or lessees, or other persons taking title, not only the

life estate hereby created but also the interest and estate in remainder hereinafter mentioned and hereby created; and immediately upon the death of the said William A. Knell, without having disposed of said property in the exercise of the powers aforesaid, or as to so much of the same as may remain, unto and to the use of Annabelle Price, her heirs and assigns, in fee simple.

Inasmuch as Mr. Knell died without having disposed of the property in exercise of the powers given him in the habendum clause, Miss Price considered that the property passed to her in fee simple at Mr. Knell's death. Mrs. Knell thought otherwise. She filed a complaint in the Circuit Court for Kent County seeking a judgment declaring that the habendum clause of the deed "in so far as it purports to give [Miss Price] the fee simple ownership of the ... property at the death of [Mr.] Knell [was] void," so that the property became a part of Mr. Knell's estate. The court "adjudged, ordered, declared and decreed that":

1. The habendum clause in the Deed from Libersky to Knell accurately reflected the true intent of William Knell. Accordingly, the straw deeds together had the effect of creating a life estate in William Knell and a remainder interest in Jessie Annabelle Price.

2. The transfer was not a fraudulent conveyance and therefore a valid transfer of title.

3. William Knell therefore died owning a life estate with a remainder interest in Jessie Annabelle Price.

4. Upon the death of William Knell, the property passed by operation of law to Jessie Annabelle Price in fee simple absolute. The property therefore is not includable in the estate of William Knell.

Having so declared, the court stated that it was "unnecessary for the Personal Representative of the estate of William Knell to take any further action to effectuate a transfer of title of the property." ·

Mrs. Knell was not content. She appealed to the Court of Special Appeals. It affirmed the judgment. *Knell v. Price,* 77 Md.App. 331, 550 A.2d 413 (1988). Still not satisfied,

Mrs. Knell sought our review. We granted her petition for the issuance of a writ of certiorari and ordered that the case be certified to us. The petition presented two questions:

1. Whether a conflict between the granting and habendum clauses of a deed should have been resolved in favor of the granting clause?

2. Were the deeds executed by the deceased husband and trustee in December 1978 for purposes of defrauding [Mrs. Knell] of her statutory share in her deceased spouse's estate?

In the circumstances of this case, the answer to the first question is "no" and the answer to the second question is "yes."

### The Granting Clause v. The Habendum Clause

■ It is not disputed that the granting clause and the habendum are not harmonious and cannot be reconciled. Ordinarily, we have abided by the general rule that where the granting clause and the habendum clause are in conflict, the granting clause will prevail. *Adams v. Parater,* 206 Md. 224, 236, 111 A.2d 590 (1955); *Literski v. Literski,* 166 Md. 641, 644, 171 A. 874 (1934); *Marden v. Leimbach,* 115 Md. 206, 209, 80 A. 958 (1911); *Pritchett v. Jackson,* 103 Md. 696, 698, 63 A. 965 (1906); *Winter v. Gorsuch,* 51 Md. 180, 184–185 (1879).

> The traditional reasoning behind this result is that such an habendum clause is considered repugnant to the granting clause. More broadly, the repugnancy doctrine states that as between any two clauses, if the second is repugnant to the first, the former controls. No consideration is given to the overall intention of the parties to the deed. This doctrine operates as a matter of law and not as a principle of construction.

6A *Powell on Real Property,* ¶ 901 [1][a] (1949, 1989 rev. ed.). 4 *Tiffany on Real Property,* § 979 (3d ed. 1920, 1975 rev. ed.) at 99 explains:

> In case of a clear repugnancy between two clauses of the conveyance, the earlier clause should, it is said, pre-

vail over the later clause.... [This rule] will be applied, however, it is said, to prevent the revocation by implication, by a later clause, of an earlier provision made in clear, explicit and unambiguous words, such a revocation being required to be in terms no less clear and explicit than those of the earlier provision.

(footnotes omitted). The general rule may be tempered, however, in certain circumstances. *Tiffany* continues:

But inharmonious provisions should be reconciled and effect given to all of them so far as that is possible by reasonable interpretation. Otherwise, provisions repugnant to what is determined to be the intention of the parties should be rejected.

*Id.* (footnotes omitted). In *Hammond v. Hammond*, 159 Md. 563, 152 A. 107 (1930), the circumstances before the Court were that

[a]n owner in fee simple of certain real estate in Baltimore conveyed it to one who immediately reconveyed it to the first grantor by a deed purporting in the granting clause to transfer a fee simple title, but containing an habendum clause, which defined the regranted estate as being vested in the grantee for his life only, with power of disposition by sale, lease, or mortgage, and with remainder to three of his children, as joint tenants, if the reserved powers were not exercised. Subsequently the original owner, and grantor in the first deed, executed a will bequeathing in trust a pecuniary legacy, for the payment of which his personal estate, at the time of his death, six years later, was insufficient. The trustee under the will, invoking the rule that an habendum repugnant to the granting clause in a deed is inoperative, ... advanced the theory that the reconveyance to the first grantor effected no change in the fee simple title with which he was previously invested, and that, not having disposed of the property in his lifetime, it passed as his absolute estate under the residuary clause of his will, subject to the charge of the pecuniary legacy to the

extent of the deficiency resulting from the inadequacy of his remaining estate.

*Id.* at 564, 152 A. 107. We held that the habendum controlled. We explained that the provisions of the habendum clause

represent the sole object for which the two deeds were executed and recorded is perfectly clear from the method of conveyance and re-transfer thus employed. Unless the habendum is given effect, the execution of the deeds was wholly futile. It was obviously intended that they should accomplish a change of title. If the habendum should be ignored as technically repugnant to the granting clause in the second deed, the title would be in precisely the same tenure as though neither of the deeds had been executed. Therefore, to hold the habendum nugatory would be to defeat the manifest design of the two formal conveyances.

*Id.* at 564–565, 152 A. 107. We continued:

Ordinarily, the rule which prefers the granting clause to an inconsistent habendum is applied when a deed must be construed with exclusive reference to its own terms. It is the purpose of the rule to determine which of the two conflicting provisions in the deed shall prevail when the deed itself does not solve the problem. But when the real and specific intention is evident from the process of conveyance of which the particular deed forms a part, there is no occasion to utilize the conventional rule of construction just mentioned. The deed containing the habendum under inquiry must be construed in connection with the preceding grant, in immediate pursuance of which it was executed and delivered. The only actual consideration for either deed was the patent purpose of the first grantor to invest himself with a different title from that which he already held. That purpose is as plainly demonstrated by the coincident execution of the two deeds, as if it had been definitely stated in both instruments. The application of the rule invoked in this case is not required by any uncertainty arising from

conflicting expressions of intention in a deed which must be separately considered, but it would frustrate the palpable design of dual and interdependent conveyances and render them entirely meaningless and useless.

*Id.* at 565, 152 A. 107. The Court distinguished the cases in which it applied the rule that the habendum, if repugnant, must yield to the granting clause. Those cases, the Court observed,

were not concerned with interrelated deeds, but with the interpretation in each instance of an individual deed and with the question of preference as between its two irreconcilable descriptions of the title to be conveyed.

*Id.* at 565–566, 152 A. 107 (citations omitted). The Court opined:

Under the special conveyancing conditions presented in this case it is permissible and proper to apply the cardinal rule that a deed should be so construed as to effectuate the intention of the parties, *if that result is possible without violation of any principle of law.*

*Id.* at 566, 152 A. 107 (emphasis added).

The conveyancing circumstances in the case at hand were comparable to those in *Hammond* and it may serve as a paradigm. Furthermore, as in *Hammond,* the record discloses independent circumstances tending to confirm the purpose which the habendum clause indicates. Mr. Knell's will, duly admitted to probate, declared that

all of the furniture, furnishings and household effects which are in my home on Rock Hall Avenue, Rock Hall, Maryland, are the property of my friend, Annabelle Price. Any of such household items which were originally mine have been given by me to the said Annabelle Price during my life time and are now her sole and exclusive property.

The will gave, devised, and bequeathed

[a]ll the rest, residue and remainder of my estate, of whatsoever kind or nature, and wheresoever situated, whether real or personal, . . . to Annabelle Price.

The will nominated and appointed Miss Price "executrix ... to serve without bond," and she was appointed personal representative of the estate by administrative probate order of the Register of Wills. There is no doubt that Mr. Knell intended that the property in question pass to Miss Price if he owned it at the time of his death. He obviously desired that *all* of his assets go to her on his decease. We hold that, in the circumstances here, the habendum prevailed over the granting clause to effectuate Mr. Knell's intention. The question then is whether a rule of law or construction prevents the recognition and fulfillment of the clear and only purpose to which the deeds in this case were directed.

### The Rights of a Surviving Spouse

■ Maryland Code (1974, 1989 Cum.Supp.), § 3–203 of the Estates and Trusts Article (ET) provides in pertinent part:

(a) *General.*—Instead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue.

(b) *Limitation.*—The surviving spouse who makes this election may not take more than a one-half share of the net estate.

It is "settled law that a widow is entitled to no part of her husband's estate except that of which he died seized or possessed." *Grove v. Frame*, 285 Md. 691, 695, 402 A.2d 892 (1979), and cases therein cited at 695–696, 402 A.2d 892. As we have seen, the conveyancing here had the effect of reducing the size of Mr. Knell's estate at his death by excluding the real property. *See* ET § 1–301. Prior to 1970, our decisions dealing with the right of a husband to transfer his personal property recognized that he had this right *"provided that he relinquishes all dominion and control over the property during his lifetime."* *Grove* at 696, 402 A.2d 892 (emphasis added). Almost 150 years ago, the Chancellor said in *Hays v. Henry*, 1 Md. Ch. 337 (1848),

which was concerned with a house and lot subject to a ground rent:

[T]here can be no doubt of [Hays's] power to dispose absolutely of this description of property during his life, independently of the concurrence, and exonerated from any claim of the wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition by the husband be *bona fide*, and no right is reserved to him, then, though made to defeat the claim of the wife, it will be good against her, because, as was observed in the argument, an act cannot be denounced as fraudulent which the law authorizes to be done.

*Id.* at 338. "But," the Chancellor added:

[I]f it be a mere device or contrivance, by which the husband, not parting with the absolute dominion over the property during his life, seeks, at his death, to deny his widow that share of his personal estate which the law assigns to her, then it will be ineffectual against her.

*Id.* at 339. *Rabbitt v. Gaither*, 67 Md. 94, 104–105, 8 A. 744 (1887), stated:

[A] husband may alienate his personal property and his equitable interest in land, either by sale or gift, without the concurrence or assent of his wife, and if the transfer be absolute and unconditional, and without any reservation of interest in, or control over, the property to himself, and if the possession be parted with or delivered in pursuance of the conveyance, it is valid even though his intent and purpose in making it, may have been to deprive his wife of her dower or thirds therein, provided there be no fraudulent participation on the part of the grantee or donee in such intent or purpose. In fact, this power of the husband over such property, has been so long recognized by the courts, and so often exercised, as to have become not only a well-established principle of law, but a settled rule of property upon which a large number of titles depend. But on the other hand, if the transfer be colorable merely, that is to say, if it be a mere device or

contrivance by which the husband does not part with the absolute dominion over the property during his life, but seeks thereby to defeat the claims of his widow at his death, the law pronounces it a fraud upon her rights, and this fraud may be proved and established by his retention of possession, during his life, by a reservation of an interest to himself on the face of the conveyance, or by an outside agreement or arrangement between him and his grantee or donee, to the effect that he shall receive the benefit of, or have control over, the property, during his life, or by any other fraudulent participation on the part of the grantee or donee to aid him in his purpose of defeating the rights which the law gives to his widow upon his death.

We quoted *Rabbitt* in *Grove* 285 Md. at 696–697, 402 A.2d 892, and *see* cases cited in *Grove* at 697, 402 A.2d 892. This rule of law now applies to real property as well as to personal property. We pointed out in *Grove:*

Prior to 1970, the test to determine whether there had been a fraud on a widow's marital rights applied to personalty only because the transfer of legal title to real property, without the wife's consent, did not destroy her right of dower upon her husband's death.

*Id.* at 697, 402 A.2d 892. Judge Cole, speaking for the Court, said:

However, when the General Assembly abolished the estates of dower and curtesy by Chapter 3, § 1 of the Laws of Maryland 1969, now Code (1974), § 3–202 of the Estates and Trusts Article, it effectively destroyed any valid distinction between the rights of a surviving spouse to share in the personalty or real property of the deceased spouse. Therefore the only manner in which a widow may now seek to set aside an inter vivos transfer of property made by her husband is by proof that he defrauded her by not absolutely and unconditionally relinquishing control over the property during his lifetime. In the absence of fraud, the only interest she can assert in lieu of taking under her husband's will is to a share of the

property owned by her deceased husband at the time of his death [pursuant to Code, § 3–202 of the Estates and Trusts Article].

*Id.* In *Allender v. Allender,* 199 Md. 541, 550, 87 A.2d 608 (1952), quoted in *Whittington v. Whittington,* 205 Md. 1, 11, 106 A.2d 72 (1953), we said:

The doctrine of fraud on marital rights represents an effort to balance the social and practical undesirability of restricting the free alienation of personal property against the desire to protect the legal share of a spouse. It has always been recognized that a husband, in the absence of statutory regulation like that in the case of dower, has an unqualified right to give away his personal property [and now, his real property] during his life time, even though the effect is to deprive the wife of her statutory share. But if the gift is not absolute and unconditional and the donor retains dominion and control over the property during his lifetime, the courts have held that the gift is colorable and may be set aside.

*See Shimp v. Huff,* 315 Md. 624, 556 A.2d 252 (1989).

It may be that "[n]o general and completely satisfactory rule to determine the validity or invalidity of transfers alleged to be in fraud of marital rights has yet been evolved in this State." *Whittington,* 205 Md. at 14, 106 A.2d 72. *See Klosiewski v. Slovan,* 247 Md. 82, 88, 230 A.2d 285 (1967). But here, it is perfectly clear that Mr. Knell retained control of the property during his lifetime by establishing a life estate in himself with unfettered power in him, while living (except by will), to dispose of all interests in the property in fee simple. He did not part with the absolute dominion of the property during his life. His conveyance, through a straw man, of the remainder of the property was not complete, absolute, and unconditional. The law pronounces this to be a fraud on the marital rights of Mrs. Knell. His reluctance to relinquish control over the disposition of the property during his lifetime defeated his intention.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR KENT COUNTY WITH DIRECTION TO ENTER A JUDGMENT IN ACCORDANCE WITH THIS OPINION;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY JESSE ANNABELLE PRICE.