559 So.2d 443 (1990)
Joan TRAUB, Appellant,
v.
Jerrod ZLATKISS, et al., Appellees.
No. 89-760.
District Court of Appeal of Florida, Fifth District.
April 12, 1990.
*444 Carol E. Donahue, Winter Park, for appellant.
Harvey M. Alper of Massey, Alper & Walden, P.A., Altamonte Springs, for appellee Linda Zlatkiss.
Bruce W. Flower, Maitland, for appellee Jerrod Zlatkiss.
COWART, Judge.
At the time of his death Sheldon Traub was friends with his two sons by a previous marriage, Martin and Arnold, but not with his wife, Joan Traub. Divorce proceedings were pending.
For years prior to his death Sheldon, a man of some means, had extensive business relations with his partners and friends, Jerrod Zlatkiss and Jerrod's wife, Linda. The decedent, Sheldon Traub, coowned with Linda certain businesses, rental land and mortgages. Linda acted as a bookkeeper for the jointly owned business interests and collected the receipts from the jointly owned mortgages and deposited them in jointly owned bank accounts. Not long before his death, the decedent conveyed his interest in certain property to Jerrod, and transferred his shares of stock in a certain corporation to that corporation and assigned certain mortgages to his two sons. The jointly owned bank account was transferred to an account in Jerrod's and Linda's names alone.
In his will, the decedent named Jerrod as personal representative of his estate. The widow elected to take the elective share of her deceased husband's estate that is permitted by section 732.201, Florida Statutes. Thus the stage was set for controversy and litigation.[1] The widow objected to the personal representative's inventory as not including *445 the assets transferred by the decedent before his death. Her objection was overruled. She then filed this action against Jerrod, individually and as personal representative, Linda, the two sons and certain business entities. The second amended petition contains 70 paragraphs divided into 10 counts. From an order dismissing Counts 7 and 9, the wife appeals.
In Counts 7 and 9, the petition alleges that prior to his death the decedent conveyed to Jerrod the decedent's interest in certain lands (paragraph 36), transferred certain mortgages to his sons (paragraph 61) and transferred his stock in a certain corporation to that corporation (paragraph 64), all without receiving "a reasonably equivalent value" and with intent to "defraud" the widow of her elective share in the transferred properties and seeks to have all of the transfers set aside to the extent of her statutory share as widow of the decedent and the transferred property be held to be assets of the decedent's estate subject to administration and to the widow's elective share. The petition also seeks an accounting as to one-half of the funds Linda received from the transferred properties declared to be held by her as constructive trustee for the decedent and to have these funds added to the assets of the decedent's estate. We affirm the dismissal of these counts as failing to state a cause of action.
Section 732.206, Florida Statutes, provides that the surviving spouse's elective share of the decedent spouse's estate is calculated by reference to "all property of the decedent ... that is subject to administration... ."
In In re Solnik's Estate, 401 So.2d 896 (Fla. 4th DCA 1981), the court held that the widow's elective share did not extend to joint savings accounts with rights of survivorship that the decedent had established in the names of himself and his daughter. The court noted that by using the term property "subject to administration" in section 732.206, the legislature did not intend to include non-probate assets in the computation of the elective share. In Kelley v. Hill, 481 So.2d 1311 (Fla. 2d DCA 1986), the court, relying on Solnik, held that certain real property owned by the decedent prior to her marriage was not "subject to administration" under section 732.206 where the deed to the property had passed title to decedent's daughter by a previous marriage. The court stated:
Appellant does not attempt to set aside decedent's conveyance on any of the conventionally recognized grounds of rescission or cancellation. He simply attempts to have the value of the property included within the estate for the purpose of calculating his elective share.
We conclude that as long as the deed is viable for the purpose of passing title to the property, the property is not "subject to administration" as provided by section 732.206.
Appellant would have us, in regard to a surviving spouse's elective share, read into chapter 732 a legislative intent to prohibit otherwise valid conveyances that are intended to reduce the assets subject to administration. We perceive no such intent. On the contrary, we would have serious reservations as to the far-reaching consequences such a construction might have in regard to estate planning.
481 So.2d at 1312.
The widow does not allege she is a creditor of her deceased husband or that any of the subject property was homestead property. She does, however, seek to set aside the transfers, claiming her deceased husband's actions in disposing of what otherwise would have been probate assets were done with the intent to deprive her of her elective share.
The widow cites Finley v. Finley, 726 S.W.2d 923 (Tenn. App. 1986) and Matter of LaGarce's Estate, 532 S.W.2d 511 (Mo. App. 1975) as authority for her position but those cases involved statutes which made voidable conveyances made with an intent to defeat the surviving spouse's elective share. There is no such statute in Florida. The widow claims, however, that in the absence of a statute, Maryland permits a surviving spouse to invalidate transfers of a decedent spouse made with the intent of *446 defeating the surviving spouse's elective share. That statement is not exactly correct. In Allender v. Allender, 199 Md. 541, 87 A.2d 608 (1952), the Maryland Court of Appeals explained:
The doctrine of fraud on marital rights represents an effort to balance the social and practical undesirability of restricting the free alienation of personal property against the desire to protect the legal share of a spouse. It has always been recognized that a husband, in the absence of statutory regulation like that in the case of dower, has an unqualified right to give away his personal property during his lifetime, even though the effect is to deprive the wife of her statutory share. But if the gift is not absolute and unconditional and the donor retains dominion and control over the property during his lifetime, the courts have held that the gift is colorable and may be set aside.
In Knell v. Price, 318 Md. 501, 569 A.2d 636, 641 (1990), the Maryland court quoted from an earlier decision declaring that "the only manner in which a widow may now seek to set aside an inter vivos transfer of property made by her husband is by proof that he defrauded her by not absolutely and unconditionally relinquishing control over the property during his lifetime."
These statements of Maryland law as to the elective share are similar to the law of Florida as to dower before that doctrine was abolished in 1975 and replaced by the statute relating to an elective share:
The policy of this country is not to restrict the right of the owner to sell or give away his personal property; and while we think the husband cannot, by last will and testament, so bequeath his personal property as to deprive his widow of her right of dower therein, yet he may sell or give his personal property away, even although it is with the avowed purpose of keeping his wife from getting her dower therein, but such sale, or gift must be a bona fide one, and be perfected.
Smith v. Hines, 10 Fla. 258, 285-86 (1863). Under Smith v. Hines, a husband could dispose of his personal property during marriage and thus defeat his wife's dower interest even if his sole motive was to defeat dower, subject only to the qualification that the transfer was not illusory. This principle was applied in Whidden v. Johnson, 54 So.2d 40 (Fla. 1951) where the court held that certain gifts were full and complete and the widow had no standing to contest them.
There is no statute providing for setting aside transfers of real or personal property on the grounds they were made with an intent to diminish the elective share of a surviving spouse. At most it would appear, consistent with old dower law, the only restriction on a spouse's transfer of that spouse's separate real or personal property to defeat a surviving spouse's elective share is that the transfer must be a bona fide completed transfer and not a sham or artifice in which there is no actual, effective transfer. Smith v. Hines. The widow has not alleged that the transfers by decedent which she seeks to void were not absolute and unconditional or that the decedent retained a property right in those assets which, upon his death, became a part of his probate estate, as distinguished from her claim that the transfers were made for the purpose of "defrauding" her of her elective share. If any further restrictions on transfers of a spouse's property to avoid a surviving spouse's elective share are desirable, it is for the legislature to adopt them. See In re Estate of Katz, 528 So.2d 422 (Fla. 4th DCA 1988) (refusing to invalidate charitable disposition made in inter vivos trust under mortmain statute which refers to charitable devises).
Completed inter vivos transfers of assets by a spouse which reduce the transferring spouse's probate estate, even if made with the specific intent to diminish or eliminate a surviving spouse's statutory elective share, do not constitute a legal "fraud" on the surviving spouse and are not subject to being set aside in whole or in part at the behest of the surviving spouse in order to increase the surviving widow's elective share.
*447 We affirm the dismissal of these counts based on substantive law. However, the widow also has a procedural impediment to this direct action to void transfers made by her deceased husband before his death. Even in cases where transfers by decedents are subject to rescission upon classic grounds such as fraud, undue influence, mistake, or lack of mental capacity (or assets subject to administration are held in a constructive trust for the decedent), the cause of action for rescission, or to establish a constructive trust, is in the personal representative of the decedent's estate and cannot be directly asserted by the widow.[2] When a probate estate appears to have a cause of action that will increase the assets of the estate and therefore the beneficial interests of legatees, or the widow's statutory elective share, and the personal representative appears to have an interest that is adverse to, or which conflicts with, the interests of the estate, the law appears to provide a procedural remedy in Florida Rule of Probate and Guardianship 5.120(a) which provides in relevant part:[3]
When it is necessary that the estate of a decedent... be represented in any probate ... proceedings and ... the personal representative ... is or may be interested adversely to the estate ..., or the necessity arises otherwise, the court may appoint an administrator and litem ..., without bond or notice for that particular proceeding. (Emphasis added).
In the midst of Count 7, it is alleged (paragraph 43) that the funds in the old joint bank account of the decedent and Jerrod and Linda, were transferred before the decedent's death to the new joint account of Jerrod and Linda. These allegations appear to relate to a completed transaction which had the effect of divesting the decedent of his interest in the funds in the old account prior to his death. Other allegations appear to relate to funds from mortgages and rentals after they were transferred by the decedent and which were received by Linda and were deposited in the new account in which the decedent had no interest. Our holding here is that these transactions cannot be set aside in a direct action by the widow merely because their effect was to reduce the decedent's estate subject to administration and were made for the express purpose of reducing the widow's elective share, if they were otherwise valid and legally complete and effectual. Nevertheless, the petition alleges in paragraph 46 of Count 7 that "Linda Zlatkiss has admitted that she was holding money from the investments listed in this Count VII as a fiduciary from Sheldon Traub at the time of his death." This allegation has given concern because while it appears to be based on other allegations of fact which do not support its conclusion, it is alleged in the form of an admission of fact rather than as a conclusion of law. In view of our holding in this case, the other allegations in that count show that the funds Linda was holding from the transferred prior account and the transferred assets were not owned by the decedent at the time of his death and that Linda merely admitted she held funds in the new joint account. Linda may have also not understood the legal effect of the evidentiary facts involved in the issues in this appeal. In any event our holding is, of course, without prejudice to a properly appointed administrator ad litem obtaining from Linda funds of the decedent, if any, which were, as a matter of law, held by Linda as trustee for the decedent at the time of his death.
AFFIRMED.
DANIEL, C.J., and SHARP, J., concur.
NOTES
[1] The probate court's dismissal of the widow's motion to remove Jerrod as personal representative is the subject of another appeal now pending before this court (Traub v. Zlatkiss, No. 89-876).
[2] We note that one case, In re Estate of Zaloudek, 407 So.2d 317 (Fla. 4th DCA 1981), holds that residuary legatees could state a cause of action against executors for failure of the executors (one of whom had been the decedent's guardian) to account for certain interest paid after the decedent's death. No authority is cited for this holding.
[3] See In re Estate of Cordiner, 458 So.2d 418 (Fla. 2d DCA 1984); Woolf v. Reed, 389 So.2d 1026 (Fla. 3d DCA 1980).