937 A.2d 262

**Kathleen Sexton SCHOUKROUN**

v.

**Maryse L. KARSENTY & Bernadette Schoukroun.**

**No. 1689 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Dec. 11, 2007.

J. Marcus Slowiak, Annapolis, MD, for Appellant.

Linda K. Brown, Laurel, MD; Harold B. Murnane, III, Glen Burnie, MD, for Appellee.

Panel: MURPHY, C.J., and DAVIS, KENNEY, III, JAMES A., (Retired, Specially Assigned), JJ.

MURPHY, C.J.

During its 1989 annual conference, the National Conference of Commissioners on Uniform State Laws approved and recommended for enactment the Uniform TOD Security Registration Act (the Uniform Act). The Commissioners' Summary of this Act included the following highlights:

- Allows owners of investment securities to designate death beneficiaries when the issuers provide such a service to their customers.

- Frees issuers of any liability for a good faith transfer to any beneficiaries.

- Preserves the rights of a deceased owner's creditors in securities that are transferred to any beneficiaries.

- Preserves a customer/owner's control over the securities, including the power to revoke any beneficiary designation, during the life of that customer/owner.

- Provides that TOD transfers are nontestamentary transfers.

- Does for investment securities what POD (Pay on Death) statutes have done for cash accounts in almost every state.

Section 9 of the Uniform Act, in pertinent part,[1] provides:

(c) A transferee ... is subject to liability to any probate estate of the decedent for allowed claims against that estate and statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances. The liability of a

---

1. Section 9 also includes provisions relating to the times within which, and procedures by which, surviving spouses and creditors must assert their claims against the TOD transferee.

... transferee may not exceed the value of [TOD] transfers received by that transferee.

Clarke A. Gravel, Esq. of Burlington, Vermont, was on the Commissioners' Committee that drafted the Uniform Act. When Vermont adopted that Act, Mr. Gravel authored a Vermont Bar Journal article in which he stated:

Under the uniform law, the transfer-on-death form retains for the owner of the property (such as stocks, etc.) all control until the owner's death. The TOD designee has absolutely no power over the securities until that occurrence.

* * *

Existing creditors' interests do not change. If a creditor had any interest in or to the assets of the deceased, those rights carry over to the new owner of the same assets. The new owner must satisfy the creditor's claims.

* * *

In addition to protecting creditors' claims, the Act protects statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances.

* * *

This Act provides an effective, efficient and thus useful tool for the probate practitioner.

Clarke A. Gravel, *The Uniform Transfer on Death Security Registration Act (No. 23, Acts of 1999)*, 25–SEP Vt. B.J. 14 (1999).

The Vermont statute that was the subject of Mr. Gravel's article included the following provision:

(b) A transferee of a nonprobate transfer is subject to liability to any probate estate of the decedent for allowed claims against that estate and statutory allowances to the decedent's spouse and children to the extent the estate is insufficient to satisfy those claims and allowances. The

liability of a nonprobate transferee may not exceed the value of nonprobate transfers received by that transferee. West's Vermont Statutes Annotated, Title Nine, Part 5, Chapter 134, § 4359(b).

Maryland has adopted some—but not all—of the provisions of the Uniform Act. Maryland TOD transfers are controlled in part by the Maryland Uniform TO D Security Registration Act (the Maryland Act), Title 16 of the Estates and Trusts Article. Although the Maryland Act does not include a provision similar to Section 9 of the Uniform Act, § 16–109(b) provides that "[t]his title does not limit the rights of creditors of security owners against beneficiaries and other transferees under other laws of this State."

Included in the legislative history of the Maryland Act, which took effect on October 1, 1994, is an article authored by Professor Richard V. Wellman of the University of Georgia Law School, in which Professor Wellman notes that "the valid contractual protections ... for the issuer of a TOD registration ... might not protect an account beneficiary against being compelled to make restitution to a deceased owner's creditor or spouse claiming the protection of a domiciliary law against the deceased owner's nonprobate gifts at death." In a 1987 Georgia Law Review article, Professor Wellman stated:

> The effectiveness of a TOD directions against claims of a deceased registrant's creditors, the right of a registrant's spouse to elect against any will ... are untested against the will-like effect of a TOD registration.

*Transfer–On–Death Securities Registration: A New Title Form,* 21 Ga.L.Rev. 789, 823–24 (1987). This appeal from the Circuit Court for Anne Arundel County presents the question of whether the "statutory share" of a decedent's surviving spouse includes the decedent's Transfer–On–Death (TOD) accounts. For the reasons that follow, we answer "yes" to that question.

## Background

Two of the parties to this appeal—Kathleen Sexton Schoukroun (Kathleen), appellant/cross-appellee, and appellee/cross-

appellant Bernadette Schoukroun (Bernadette) were married to the late Gilles H. Schoukroun, who died on October 18, 2004. The third party to this appeal, Maryse L. Karsenty, is Mr. Schoukroun's sister and is the Personal Representative (PR) of his estate, which was opened in the Orphans' Court for Anne Arundel County on February 2, 2005.

Mr. Schoukroun and Bernadette were married on October 10, 1987. On April 20, 1990, Bernadette gave birth to their only child, Lauren Schoukroun. Mr. Schoukroun and Bernadette were divorced by a judgment of the Circuit Court for Anne Arundel County that was entered on September 5, 1995. On June 23, 2004, Mr. Schoukroun (1) executed the final version of his Last Will and Testament, (2) created a revocable trust, the Gilles H. Schoukroun Trust (hereinafter "Trust"), of which he was the trustee and settlor, and (3) transferred assets from three financial accounts into the Trust.

In his will, Mr. Schoukroun designated his sister, Maryse L. Karsenty, appellee, the Personal Representative of his estate. Clause Three of the will stated: "I give all my tangible personal property, together with any insurance providing coverage thereon, to my wife, KATHLEEN M. SEXTON, of Crofton, Prince George's County, Maryland...." In Clause Four, Mr. Schoukroun bequeathed the "rest, residue and remainder" of his estate to the Gilles H. Schoukroun Trust.

When Mr. Schoukroun created the Gilles H. Schoukroun Trust (the "Trust"), he named himself settlor and trustee, appointed appellee Maryse L. Karsenty trustee of the Trust upon his death,[2] and designated Lauren as the sole beneficiary of the Trust. Clause Two of the Trust, in pertinent part, provided:

The Settlor reserves the right to amend or terminate this trust from time to time by notice in writing delivered to the Trustee during the lifetime of the Settlor, and any amendment or termination shall be effective immediately upon

---

**2.** In the event that his sister was unable to serve as Trustee, Kathleen was named as the alternate trustee.

delivery thereof to the Trustee, except that changes with respect to the Trustee's duties, liabilities or compensation shall not be effective without its consent.

On the same day that he created the Trust, Mr. Schoukroun transferred into the Trust assets that he held in three financial accounts: (1) E*Trade Financial Account Number 4607–7939,[3] (2) Fidelity Investments Account # Y94–061670,[4] and (3) Fidelity Investments Account # Z75–163619.[5]

On July 12, 2004, Mr. Schoukroun made changes to two other investment accounts, Fidelity Investments Account # Y94–130192,[6] and Fidelity Investments Account # 475–549479,[7] so that the Trust was listed as the beneficiary of the two accounts. Thus, these two accounts were to "transfer-on-death" (TOD). At the time of Mr. Schoukroun's death, the assets of all five financial accounts totaled approximately $422,000.

On November 2, 2004, Kathleen's lawyer sent a letter to Fidelity Investments stating that Kathleen

1) Claims an interest in the accounts and any other accounts in the name of the deceased or in the name of the Gilles H. Schoukroun trust.

---

**3.** This account had been opened by Mr. Schoukroun on March 9, 2000. The account number was later changed to 6525–4731. The total value of the securities in this account was recorded in a November 2004 account statement as $29,037.15.

**4.** Mr. Schoukroun signed the application for this account on September 23, 2003. On September 30, 2004, it was valued at $75,257.25.

**5.** Mr. Schoukroun signed an application for this account on June 19, 2003, and that same day transferred assets from a T. Rowe Price account into this one. On October 23, 2003, Mr. Schoukroun transferred assets from an account with Oak Funds Associates into this account. On September 30, 2004, it was valued at $49,034.67.

**6.** This account was opened for Mr. Schoukroun on May 16, 2003. As of September 30, 2004, it was valued at $257,863.31.

**7.** This account was opened on March 19, 2003. On September 30, 2004, it was valued at $14,069.51.

2) Objects to the implementation of the registration in beneficiary form, of the accounts and any other accounts in the name of the deceased or in the name of the Gilles H. Schoukroun trust.

On February 2, 2005, the PR filed a Petition for Administration of Mr. Schoukroun's estate with the Register of Wills for Anne Arundel County, and was appointed the personal representative of the estate on the same day.[8]

On March 1, 2005, Kathleen filed an Election to Take Statutory Share of Mr. Schoukroun's estate.

On May 5, 2005, the PR filed an inventory of Mr. Schoukroun's estate with the Register of Wills for Anne Arundel County, in which the total value of the estate was appraised at $32,483.17. In the First Account of the estate, the PR recorded disbursements from the estate totaling $12,171.49, thus reducing the balance of the estate to $20,758.11.[9]

## Procedural History

On March 22, 2005, Kathleen filed a "COMPLAINT FOR FRAUD ON MARITAL RIGHTS and to impose a Constructive Trust and COMPLAINT FOR CONSTRUCTIVE FRAUD" against the PR and Bernadette (in Bernadette's capacity "as custodian of Lauren Schoukroun[,] a minor child and trust beneficiary"). Kathleen's complaint included the following assertions:

15. That as the Husband of the Plaintiff, Kathleen Sexton Schoukroun, Gilles H. Schoukroun had both a legal and an equitable duty arising out of the marital relationship between the parties. A material part of said marital relationship was the trust and confidence placed by Kathleen Sexton Schoukroun in Gilles H. Schoukroun, which trust and confidence was accepted by Gilles H. Schoukroun.

---

8. She then appointed attorney Linda K. Brown as the resident agent.

9. The expenses included payments to an attorney, a bank, a funeral home, a publication, and a Federal Express delivery expense.

16. That Gilles H. Schoukroun, breached his legal and equitable duties and committed a fraud against the Plaintiff Kathleen Sexton Schoukroun, by his conveyance of all, or substantially all, of his assets to his revocable Trust during his lifetime.

17. That the transfer by Gilles H. Schoukroun of all or substantially all of his assets to the Trust was not a good faith transaction; it was a device to retain actual ownership, use and enjoyment of the property until death, and at the same time to defeat the right and interest of the Plaintiff under the law of descent and distribution in such property at death.

18. The actions described in paragraphs 5–9 above were all done in fraud of the martial [sic] rights of Kathleen Sexton Schoukroun, the spouse of Gilles H. Schoukroun.

* * *

WHEREFORE, the Plaintiff prays:

A. That this Court enter its order, judgment and decree declaring that whatever right or claim that either of the defendants hold or asserts to the accounts, (and any other accounts similarly transferred to the Trust) and their proceeds, is held as a constructive trust for the benefit of Plaintiff.

B. That this Court further order, adjudge, and decree that the accounts (and any other accounts similarly transferred to the Trust) and their proceeds, were and are, an asset belonging to the Estate of Gilles H. Schoukroun, deceased, and that the same was transferred and conveyed to the revocable Trust in fraud of the marital rights of the Plaintiff, Kathleen Sexton Schoukroun.

Bernadette filed a Counterclaim that included the following assertions:

2. That the Counter–Plaintiff was married to Gilles H. Schoukroun on October 10, 1987. As a result of the

marriage, one child was born, namely Lauren R. Schoukroun, born on April 20, 1990.

3. That the Counter–Plaintiff and Gilles H. Schoukroun were divorced on September 5, 1995 by virtue of a Judgment of Absolute Divorce entered on that date, a copy of which is attached hereto, labeled "Exhibit 1", and hereby incorporated herein by reference thereto. The Judgment Of Absolute Divorce incorporated, but did not merge, a Separation and Property Settlement Agreement which the Counter–Plaintiff and Mr. Schoukroun had entered into on August 21, 1994, a copy of which is attached hereto, labeled "Exhibit 2", and hereby incorporated herein by reference thereto.

\* \* \*

5. That pursuant to the Separation and Property Settlement Agreement entered by and between the Counter–Plaintiff and Mr. Schoukroun, Paragraph 5 therein, entitled "Life Insurance", provided as follows: "The parties each agree to maintain and keep in full force and effect life insurance policies in the amount of at least $150,000 on their lives wherein the irrevocable beneficiary is the minor child, with the other party, namely the Husband and Wife, as the trustee. In December of each year, the parties shall present to each other evidence of a paid current insurance policy with the above provisions."

6. That, upon information and belief, the said Gilles H. Schoukroun did not have a policy of life insurance in effect at the time of his death naming his minor child, Lauren R. Schoukroun, as the irrevocable beneficiary. Instead, he had a policy of life insurance in effect in an amount equal to or greater than $150,000.00, naming his then surviving spouse, the Counter–Defendant, as the beneficiary.

7. That, upon the death of the said Gilles H. Schoukroun, life insurance proceeds in an amount equal to or greater than $150,000.00 were paid to the Counter–Defendant.

\* \* \*

9. That the life insurance proceeds paid to the Counter–Defendant were paid in derogation [sic] of the obligation of Gilles H. Schoukroun to maintain life insurance for the benefit of his minor daughter, Lauren R. Schoukroun.

10. That to permit the Counter–Defendant to retain said life insurance proceeds would permit her to be unjustly enriched, and it would be inequitable for her to retain said proceeds.

11. That the imposition of a constructive trust upon those insurance proceeds received by the Counter–Defendant, or those funds or assets created by, substituted for, purchased by or derived from said insurance proceeds is necessary to protect the interests in same by the minor child, Lauren, who has a higher equitable call on the property than does the Counter–Defendant.

WHEREFORE, the Counter–Plaintiff prays:

A. That this Court enter an Order that $150,000.00 of the life insurance proceeds on the life of the late Gilles H. Schoukroun paid to the Counter–Defendant (and/or those funds or assets derived therefrom) be held as a constructive trust for the benefit of the Counter–Plaintiff (on behalf of her minor child, Lauren R. Schoukroun);

B. That this Court further Order that $150,000.00 of the life insurance proceeds on the life of the late Gilles H. Schoukroun paid to the Counter–Defendant (and/or those funds or assets derived therefrom) be transferred and surrendered to the Counter–Plaintiff (on behalf of her minor child, Lauren R. Schoukroun); and

C. For such other and further relief as the nature of her cause may require.

On September 27, 2006, at the conclusion of a bench trial, the circuit court resolved Kathleen's claims against her and denied Bernadette's request for imposition of a constructive trust. The circuit court's on-the-record opinion included the following findings and conclusions:

The plaintiff, Kathleen Schoukroun, has sued requesting that I find that Mr. Gilles Schoukroun committed fraud on her marital estate, on her marital property, and requests that I impose a constructive trust on the funds being held by Ms. Karsenty, as trustee of the Gilles Schoukroun trust.

In count two, she sues for constructive fraud on the part of Gilles Schoukroun with reference to the very same trust amounts and asks that I grant a judgment in the amount of $150,000. . . .

Let me tell you that I find as a matter of fact that there is no fraud on the part of Mr. Gilles Schoukroun in the creation of this trust, actual or even constructive fraud. I find no actual fraud whatsoever. And I find no constructive fraud.

I am impelled in that direction by a number of things. First of all, his actions took place at a time when he knew he was sick. He knew he was ill. . . .

So that when . . . he sat down to draw this last will and testament and this trust, I have to find that he knew exactly what he was doing vis-á-vis his assets.

It is apparent that what he was doing was setting up a trust for Lauren, however you pronounce it. . . . Interestingly enough, when he drew both the trust and his will, he set up Ms. Karsenty as the trustee and the personal representative. But if she were unable to serve or declined to serve, he set up the plaintiff as the trustee and/or personal representative, which tells me that he certainly wasn't trying to defraud Ms. Sexton. In fact, quite the contrary, he was in reliance on her. He relied on her. He intended to rely on her if he had to, if it became necessary, if his sister couldn't serve.

It doesn't sound like the actions of somebody who is trying to defraud another. And everything I've heard about this man, this estate, these trusts, imply or tells me that he was trying to cover all bases. He was trying to cover everybody. Now what he didn't do is, of course, he didn't take out an insurance policy that he was supposed to take out.

But let me finish up. It is urged upon me that I find Knell versus Price in the Court of Appeals establishes a per se guideline for fraud in cases where one spouse disposes of their property by means of, in this case, a trust and, in setting up that trust, sets up a revocable trust, which gives them absolute control up through and to the time of their death, that that is per se a fraud upon the marital rights of their then-existing spouse.

Now while I think that's what Judge Orth said in Knell versus Price, I think and I agree with Mr. Murnane that, while it may not be the clearest thing you can read, but he says I'm talking about this case, I'm talking about these facts. And the facts in that case were that Mr. Knell strawdeeded the property out and strawdeeded it back. And the net result was he ended up with a life estate in which he had reserved to himself the absolute powers of disposition up until the time of his death.

But I read that to refer to that case and that case alone, those facts and those facts alone. A deed, a deeded situation of real property. It is not real clear, but that's what I read.

This is a case, however, of [a revocable] trust, a very common way of handling one's estate prior to death to avoid the testamentary laws, very common. I make no comment whatsoever on the anticipation of death, but I don't think it's large enough to worry about, the anticipation of death. But the old CPA, he says, wait a minute, there's an anticipation of death, get our tax money. But I don't think this estate is large enough to get tax money out, so I don't think it makes that much difference.

Anyway, I don't think Knell versus Price controls this case. I do not think that the creation of a revocable trust to the benefit of one's child, and admittedly in derogation of the estate, and as a consequence of the wife, her one-third entitlement, is a per se act of fraud. If I'm wrong in that, it should be very easy to reverse me.

Also, as I said earlier, I reiterate I find no instance, of fraudulent conduct on the part of Mr. Schoukroun in dealing with Kathleen Sexton Schoukroun. So I decline—I find for all defendants in the complaint.

Now I must address the counter-complaint. It is urged upon me that I should impose a constructive trust on funds being held by Ms. Sexton as a result of a life insurance policy that Mr. Schoukroun took out prior to their marriage. And she testified they had these discussions prior to their marriage, that they should have insurance. And he took his out in favor of her, and she took hers out in favor of her estate.

And it is suggested that I should follow those funds, because they are, it is urged upon me, they are somehow in derogation or funds that should have belonged to Lauren. Well, admittedly, Lauren was entitled to an insurance policy in the amount of $150,000 by agreement between her mother and her father. I cannot find that without even commenting on the innocence of Ms. Sexton, she is obviously the innocent party. She had nothing to do with it one way or the other.

But as Mr. Murnane points out, the case of Starleper says that, really, that's not what's important. What's important are the equities. Well, I find it to be totally inequitable to go after a life insurance policy that did not even exist at the time of the divorce and had nothing to do with the divorce. It's just property that was later created. In order for me to find that that property [ought] to be chased, I would have to find that any life insurance policy, quite possibly any property purchase, made by Ms. [sic] Schoukroun when he was in default of what I believe to be his contract, should be subject to a constructive trust without making a finding

that, A, the beneficiary, Ms. Sexton in this case, was somehow culpable or somehow involved in diverting the funds that eventually were to her interest, or, B, these funds themselves that were used to buy this life insurance policy were actually in derogation of funds that should have been used for Lauren.

I decline to so find. I don't find either of those things to be correct. And so, therefore, I find in favor of the counter-defendant in the counterclaim.

Neither Kathleen nor Bernadette was entirely satisfied with the judgments of the circuit court. Kathleen now asks (in the words of her brief):

1. Was it error for the Circuit Court to find that deceased husband's transfers of various securities accounts to a revocable trust that he created four months prior to his death, through both direct transfers to the trust and through TOD (transfer on death) designations of the same trust as beneficiary of other accounts, was not for the purpose of defrauding Appellant of her statutory share in her deceased spouse's estate?

This question may be divided into two sub-questions:

a) *where the deceased maintains total control,* (here through a TOD accounts [sic] with a revocable trust as beneficiary and through direct transfers to a revocable trust) will the court have to do a *"Whittington"* equitable analysis, or does *Knell* establish a "bright line rule" that, as a matter of law, the transfer on death is in fraud of marital rights? And

b) even if you did a *"Whittington [v. Whittington,* 205 Md. 1, 106 A.2d 72 (1954)]"* equitable analysis in this case was the trial judge clearly erroneous in not finding marital fraud?

Bernadette asks (in the words of her brief):

1. Whether the trial Judge erred in failing to order a constructive trust in favor of Cross–Appellant and against Cross–Appellee on $150,000 of insurance pro-

ceeds held by Cross–Appellee which were paid as a result of the death of Gilles Schoukroun.

For the reasons that follow, we shall affirm the judgment entered on Bernadette's counterclaim, but vacate the judgment entered on Kathleen's claim, and remand for further proceedings not inconsistent with this opinion.

## Discussion

### I. Kathleen's Appeal

Kathleen, who is entitled to a one-third share of Mr. Schoukroun's estate,[10] argues that the transfers made by Mr. Schoukroun into the revocable Trust were "for of defrauding appellant of her statutory share in her deceased spouse's estate," and therefore requests (in the words of her brief):

[T]hat the Court issue a mandate reversing the Circuit Court's Judgment in favor of the Appellees on Count One of the Appellant's Complaint to impose a constructive trust, and that said mandate:

A. Declare that whatever right or claim that either of the Appellee's [sic] hold or asserts to the accounts, (and any other accounts similarly transferred to the Gilles H. Schoukroun Trust) and their proceeds, is held as a constructive trust for the benefit of Appellant.

B. Order, adjudge, and decree that the accounts (and any other accounts similarly transferred to the Gilles H.

---

**10.** Kathleen's Election to Take a Statutory Share of the Estate was made in conformity with Md.Code Ann., Estates & Trusts Article § 3–203(b), which provides:

Instead of property left to the surviving spouse by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue.

Md.Code Ann., Est. & Trusts Art. § 3–203(a) provides:

In this section, "net estate" means the property of the decedent passing by testate succession, without a deduction for State or federal estate or inheritance taxes, and reduced by:

(1) Funeral and administration expenses;

(2) Family allowances; and

(3) Enforceable claims and debts against the estate.

Schoukroun Trust) and their proceeds, were and are, an asset belonging to the Estate of Gilles H. Schoukroun, deceased, and that the same was transferred and conveyed to the revocable Trust in fraud of the marital rights of the Appellant, Kathleen Sexton Schoukroun.

C. Order, adjudge and decree that Appellee's [sic] relinquish and surrender the accounts and any right or claim Appellee's [sic] may assert to the accounts (and any other accounts similarly transferred to the Gilles H. Schoukroun Trust) and their proceeds.

D. Issue a broader holding that: *where the deceased maintains total control,* over assets in the form of TOD accounts with a revocable trust as beneficiary and through direct transfers of assets to a revocable trust, then, as a matter of law, the transfer on death is in fraud of marital rights, in that it defrauds wife of her statutory share in her deceased husband's estate.

The circuit court was not clearly erroneous in finding that Mr. Schoukroun had not acted with the intent to defraud his widow or his daughter. That finding, however, is not of dispositive consequence to Kathleen's appeal. Kathleen relies on *Knell v. Price,* 318 Md. 501, 569 A.2d 636 (1990), for the proposition that—as a matter of law—a deceased spouse's transfer of property during the marriage constitutes fraud on the marital rights of the surviving spouse *whenever,* as is the situation in the case at bar, the "transfer" was not "complete, absolute, and unconditional." In *Knell,* a husband who had separated from his wife transferred real property to a "trustee," but the deed—which purported to create a life interest in the husband, with a fee simple interest passing to the husband's female companion upon the husband's death—contained a habendum clause that reserved to the husband the power to "sell, mortgage, lease, convey and dispose [of that property] at any time he may deem expedient[.]" *Id.* at 503, 569 A.2d 636. When the husband died, his widow argued that the real property should be included in his estate. The circuit court rejected that argument, and this Court affirmed that

decision in *Knell v. Price*, 77 Md.App. 331, 550 A.2d 413 (1988).

The Court of Appeals granted the wife's petition for writ of certiorari to answer the question, "Were the deeds executed by the deceased husband and trustee in December 1978 for purposes of defrauding [Mrs. Knell] of her statutory share in her deceased spouse's estate?" *Id.* at 505, 569 A.2d 636. The Court of Appeals answered that question in the affirmative, explaining:

> [I]t is perfectly clear that Mr. Knell retained control of the property during his lifetime by establishing a life estate in himself with unfettered power in him, while living (except by will), to dispose of all interests in the property in fee simple. He did not part with the absolute dominion of the property during his life. His conveyance, through a straw man, of the remainder of the property was not complete, absolute, and unconditional. The law pronounces this to be a fraud on the marital rights of Mrs. Knell. His reluctance to relinquish control over the disposition of the property during his lifetime defeated his intention.

*Id.* at 512, 569 A.2d 636.

According to Kathleen, *Knell* is applicable to the case at bar, in which the deceased spouse's TOD transfers were not complete, absolute, and unconditional. Kathleen argues that Mr. Schoukroun's intent is simply of no consequence because the law *pronounces* a TOD transfer to be a fraud on the rights of the surviving spouse. In support of this argument, Kathleen notes that the Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1 interprets the *Knell* holding as follows:

> [T]he Maryland Court of Appeals issued a sweeping holding that any transfer in which the decedent retained "dominion and control" over the property during life is subject to the spouse's forced share.

In a 2003 *Catholic University Law Review* article, Professor Angela M. Valario of the University of Baltimore School of Law noted:

The Maryland General Assembly has not prompted legislative change in light of *Knell* despite repeated efforts by the Maryland State Bar Association to receive clarification. *See* H.B. 265, Gen. Assem. Reg. Sess. (Md.2000); H.B. 665, Gen. Assem. Reg. Sess. (Md.1997). *Knell* presented unique facts, such as the involvement of the decedent's attorney as a strawman in the decedent's efforts to disinherit his estranged spouse. *See Knell,* 569 A.2d at 641. Moreover, Mr. and Mrs. Knell had been separated for twenty-seven years at the time of the conveyance, and the real property was purchased with separate funds and accumulated by Mr. Knell well after the parties went their separate ways. *See id.* at 636–38. In awarding Mrs. Knell one-third of the decedent's property, the court in *Knell* seemed to focus exclusively on the fact that Mr. Knell had not parted with "absolute dominion and control" and deemed this factor a per se fraud on marital rights. *See id.* at 640–42. This case provides no clarification for other non-probate assets such as joint ownership, life insurance, or other multiple party accounts. *See id.; see also* Md.Code Ann., Fin. Inst. § 1–204 (1998 & Supp.2002). Moreover, section 3–203 of the Maryland Code fails to include any reference to *Knell* in its annotations to net probate assets. See Md.Code Ann., Est. and Trusts § 3–203 (2001). The failure to articulate a clear position further suggests the ambiguity and need for clarification in the Maryland statute and case law.

Angela M. Vallario, *Spousal Election: Suggested Equitable Reform for the Division of Property at Death,* 52 Cath. U.L.Rev. 519, 537 n. 65 (2003).

■ We are persuaded that Kathleen's interpretation of *Knell* is correct.[11] We therefore hold that Mr. Schoukroun's decision to retain the power to revoke the Trust requires that

---

**11.** In *Whittington v. Whittington,* 205 Md. 1, 106 A.2d 72 (1954), the Court of Appeals applied an "equitable" analysis to the issue of whether trusts created by the deceased in savings accounts should be "stricken" as invalid transfers in fraud of his wife's marital rights. In light of our interpretation of *Knell v. Price,* there is no need to undertake a *"Whittington"* analysis.

the assets of the Trust be included in his estate for purposes of calculating Kathleen's statutory share.

■ The *Knell* decision also applies to the two financial accounts that were to be transferred to the Trust upon Mr. Schoukroun's death. Md.Code Ann., Estates and Trusts Article § 16–106 provides:

> The designation of a TOD beneficiary on a registration in beneficiary form has no effect on ownership until the owner's death. A registration of a security in beneficiary form may be canceled or changed at any time by the sole owner ... without the consent of the beneficiary.

Md.Code Ann., Estates and Trust Article § 16–109(a) provides:

> A transfer-on-death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and this title and is not testamentary.

During his life, Mr. Schoukroun retained the power to alter the beneficiary of the financial accounts he owned at Fidelity Investments. As we interpret the holding in *Knell,* even though the circuit court was not clearly erroneous in finding that none of Mr. Schoukroun's actions were undertaken with "a fraudulent intent," the assets in those accounts must also be included in his estate for purposes of calculating Kathleen's statutory share.

The Orphans' Court for Anne Arundel County allowed a claim on Lauren's behalf against Mr. Schoukroun's estate on the ground that he had breached his agreement to maintain a life insurance policy that would, upon his death, pay $150,000 to Lauren. In an unreported opinion filed simultaneously with this opinion, we have affirmed that decision. *Schoukroun v. Karsenty, et al.,* No. 557, September Term, 2006. Pursuant to § 3–203(a)(3), Lauren has an enforceable claim against the estate, and the amount of that claim reduces the "net estate." Under these circumstances, in her capacity as both residuary legatee and TOD beneficiary, (1) Lauren is liable to Mr. Schoukroun's estate, but *only* to the extent that the estate is

insufficient to satisfy Kathleen's statutory allowance, and (2) Lauren's liability does not exceed the value of what she is entitled to receive as legatee and beneficiary. We therefore direct that on remand (unless the parties "do the math" and agree to distribute the estate's assets in conformity with this opinion), the circuit court shall (1) determine the amount of Kathleen's statutory share, (2) determine the amount of Lauren's liability, and (3) enter a judgment that will provide the estate with the funds needed to satisfy Kathleen's statutory allowance.

## II. Bernadette's Cross–Appeal

■ We must apply the "abuse of discretion" standard to Bernadette's cross-appeal.[12] " 'Abuse of discretion' is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways." *North v. North*, 102 Md.App. 1, 13, 648 A.2d 1025 (1994). Writing for this Court in *North*, Chief Judge Wilner stated:

> There is a certain commonality in all of these definitions [of abuse of discretion], to the extent that they express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*Id.* at 14, 648 A.2d 1025.

The Court of Appeals recently stated:

> The analytical paradigm by which we assess whether a trial court's actions constitute an abuse of discretion has

---

12. In light of our conclusions that (1) Lauren has an enforceable claim against the estate, and (2) the assets of the Trust and the TOD accounts must be included in the calculation of Kathleen's statutory allowance, there is no longer any need to impose a constructive trust on the life insurance proceeds paid to Kathleen.

been stated frequently. In *Wilson v. John Crane, Inc.*, 385 Md. 185, 867 A.2d 1077 (2005), for example, we iterated

> [t]here is an abuse of discretion "where no reasonable person would take the view adopted by the [trial] court[ ]"... or when the court acts "without reference to any guiding principles." An abuse of discretion may also be found where the ruling under consideration is "clearly against the logic and effect of facts and inferences before the court[ ]"... or when the ruling is "violative of fact and logic."
>
> Questions within the discretion of the trial court are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." In sum, to be reversed "[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."

385 Md. at 198–99, 867 A.2d at 1084 (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312–13, 701 A.2d 110, 118–19 (1997)). An abuse of discretion, therefore, "should only be found in the extraordinary, exceptional, or most egregious case." *Wilson*, 385 Md. at 199, 867 A.2d at 1084.

*Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 418–19, 914 A.2d 113 (2007).

Having applied the abuse of discretion standard of review to the circuit court's refusal to impose a constructive trust on the life insurance proceeds paid to Kathleen, we are required to affirm the ruling of the circuit court.[13]

---

13. There are occasions on which this Court is required to affirm a discretionary ruling of the circuit court even though each appellate judge on the argument panel would have ruled differently if he or she had been serving as the trial judge in the case being reviewed. For example, in *Thodos v. Bland*, 75 Md.App. 700, 542 A.2d 1307 (1988), although each member of the panel "would have unhesitatingly grant-

JUDGMENTS AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT.

ed" the appellant's motion for a new trial, the panel nonetheless affirmed the judgment that followed the denial of that motion. This Court was required to do so because the panel was "unable to rationalize a basis for finding that the trial judge abused his discretion." *Id.* at 717, 542 A.2d 1307.